FRANK H. DAVIS and Others, as Administrators, etc., of
EDWIN HAWLEY, Deceased, Plaintiffs, *v.* JAMES M. GIFFORD,
as Executor, etc., of CASSIUS M. WICKER, Deceased,
Defendant.

First Department, March 8, 1918.

**Contract — rescission — fraud — remedies of party defrauded upon
rescission — care of property — damages — acts inconsistent with
rescission — pleading — counterclaim for rescission.**

A contract induced by false and fraudulent representations is not void, but
voidable.

A defrauded party upon discovery of the fraud may rescind the contract by
promptly tendering back all that he has received under it, and on the
rescission if the property remains in his possession, he holds it merely as
a bailee and must not exercise any rights of ownership or dominion over it
that will be inconsistent with a disaffirmance of the transaction.

The party who has rescinded a contract for fraud may pursue one of two
remedies — bring his action at law upon the rescission to recover what he
has paid, or defend an action brought against him upon the contract,
setting forth the fraud as a defense. He may bring his action in equity
for a rescission where the tender may be made by an offer in the complaint,
which offer must be kept good at the trial, and the court will adjust the
relief as equity requires, upon the facts established. Or he may affirm
the contract and sue for his damages, the measure of which will be the
difference between the value of the subject-matter of the contract as
represented and its actual value. If sued upon the contract he may
counterclaim his damages.

Unless a party promptly elects to rescind upon the discovery of the fraud
as evidenced by a tender or an equitable action, he will be held to have
affirmed the contract. Hence, the defense of fraud and a counterclaim
for a rescission at law are predicated upon a rescission evidenced by a
disaffirmance.

A person may not retain the benefits of a contract and defend against pay-
ment. His remedy, if he retains the benefits, is to counterclaim for his
damages.

Where, in an action upon a promissory note given for the balance of the
purchase price of corporate stock, the defendant alleged as a defense
that the note was obtained from him by the plaintiff by means of certain
false and fraudulent representations inducing his purchase of the stock,
and as a counterclaim alleged a rescission of the contract, the rescission
is ineffective, it appearing that the defendant retained the emoluments
accompanying the possession of the stock and actively participated in the
management of the business of the corporation for ten months after the
discovery of the fraud and the tender of the stock, and also made

many efforts to sell said stock, after the plaintiff refused to accept his tender.

Defendant was not entitled to recover damages for the fraud under his counterclaim for rescission.

MOTION by the defendant, James M. Gifford, as executor, for a new trial upon a case containing exceptions, ordered to be heard in the Appellate Division in the first instance, after the dismissal of defendant's counterclaim and the rendition of a verdict in plaintiffs' favor by direction of the court at the close of the case upon a trial before the court and a jury at the New York Trial Term in May, 1909.

*James B. Kilburn* and *C. Lansing Hays* of counsel [*Gifford, Hobbs & Beard,* attorneys], for the defendant, for the motion.

*William M. Parke* of counsel [*Stanchfield & Levy,* attorneys], for the plaintiffs, opposed.

PAGE, J.:

This action was brought to recover on a promissory note given by Cassius M. Wicker to Edwin Hawley for the sum of $2,400, payable one year after the date thereof, which was the 12th day of July, 1904. Both parties having died since the filing of the printed case and exceptions in this court, the action is continued by the administrators of the payee, as plaintiffs, against the executor of the maker, as defendant. For convenience the original parties will be referred to as plaintiff and defendant.

The defendant in his answer sets up the defense that the note was obtained from him by the plaintiff by means of certain false and fraudulent representations; that by said false and fraudulent representations the defendant was induced to purchase from the plaintiff 113 shares of the stock of the Merchants Trust Company for the sum of $25,000, and that the defendant paid $22,600 in cash, and for the balance of the purchase price gave the note in suit, and that all of the statements and representations of the plaintiff were false and were known to the plaintiff to be false at the time they were made and for a long time prior thereto, and were made by plaintiff to the defendant for the purpose of defrauding and deceiving defendant as to the true value of the stock of the

Merchants Trust Company and its financial condition, and the defendant, solely relying on and believing the truth of the said statements, paid the $22,600 and delivered to the plaintiff the note set forth in the complaint; and for a counterclaim the defendant realleges the allegations of the defense, and alleges that as soon as defendant discovered said fraud he tendered said stock to plaintiff and demanded the return and repayment of said sum and the cancellation of the said note, which the plaintiff refused and still refuses to do.

A contract induced by false and fraudulent representations is not void, but voidable. On discovery of the fraud, the defrauded party may rescind the contract by promptly tendering back all that he has received under it, and on the rescission, if the property remains in his possession he holds it merely as a bailee, he is charged with only that degree of care that a person would be who had found the property of another. He must not exercise any rights of ownership or dominion over it; that would be inconsistent with a disaffirmance of the transaction. Having rescinded, he can pursue one of two courses — bring his action at law upon the rescission to recover what he has paid, or defend an action brought against him upon the contract, setting forth the fraud as a defense. He may bring his action in equity for a rescission, where the tender may be made by an offer in the complaint, which offer must be kept good at the trial, and the court will adjust its relief as equity requires upon the facts established. Or he may affirm the contract and sue for his damages, the measure of which would be the difference between the value of the subject-matter of the contract as represented and its actual value. If sued upon the contract, he may counterclaim his damages. Unless upon the discovery of the fraud he promptly elects to rescind, as evidenced by a tender or an equitable action, he will be held to have affirmed the contract. Hence the defense of fraud and a counterclaim for a rescission at law are predicated upon a rescission evidenced by a disaffirmance. A person may not retain the benefits of a contract and defend against payment. His remedy, if he retains the benefits, is to counterclaim for his damages.

In the case at bar the defendant clearly relied upon his counterclaim. If the facts proved that he had waived his ·

rescission, so that he could not insist upon his counterclaim, the same facts would defeat his defense. The learned trial justice held that the rescission was not effective because the defendant had retained the emoluments that accompanied the possession of the stock — the office of vice-president and his membership in the board of directors and his membership in the executive committee — and actively participated in the management of the business of the corporation for ten months after he discovered the fraud and tendered back the stock and until the corporation went into the hands of a receiver. Therefore, he held, the defendant could not recover on his counterclaim, and gave judgment for the plaintiff. In my opinion, this was right, not alone for the reasons assigned, but also because the defendant, after the plaintiff had refused to accept his tender of the stock, made many efforts to sell it. This was entirely inconsistent with the theory that the contract had been rescinded. It was his duty to hold the stock so that, when a judgment was given in his favor in any action that might be brought or on any counterclaim that he might interpose for a rescission of the contract, he would be able to turn this stock over to the plaintiff.

The defendant on this motion claims that, his rescission having been held ineffective, he still had the right to recover damages for the fraud. No such counterclaim is presented in the answer. Therefore, that question does not properly arise in this case. It was not presented by the defense alleged.

The motion is denied, the exceptions overruled, with costs, and judgment directed to be entered upon the verdict, with costs.

CLARKE, P. J., SCOTT and DAVIS, JJ., concurred.

Motion denied, exceptions overruled and judgment ordered on the verdict, with costs. Order to be settled on notice.