JAMES MCCUTCHEON & COMPANY, Plaintiff, *v.* RALPH H. KIMBALL, Defendant.*

Municipal Court of New York, Borough of Manhattan, Ninth District, December 10, 1929.

*George Thoms*, for the plaintiff.

*Denis O'L. Cohalan*, for the defendant.

* Revd., 136 Misc. 646.

GENUNG, J. Action is brought for goods sold and delivered and work, labor and services furnished, pursuant to a written contract, amounting to $532.13. The contract was dated January 7, 1929, and included the following carpet estimate:

| | | |
|---|---|---|
| "Living Room: 10' 6" x 17' 6" | Using imported Scotch Wellington Chenille #3086, 1 foot margin on sides, 11½" margin on ends...... | $263 69 |
| "Dining Room 12' 9" x 9' 5½" | Using imported Scotch Wellington Chenille #3086, 11" margin on sides, 11½" margin on ends..... | 211 88 |
| "Entrance Hall: | Using imported Scotch Wellington Chenille #3086, 2½" margin on sides, 2" margin on ends....... | 46 56 |
| "Small Halls: 2' 3" x 5' 6" | Using imported Scotch Wellington Chenille #3086, 4½" margin on sides, & 2" margin on ends. Carpet from waste on Dining Room piece. Labor only............ | 10 00 |

"All of the above have ½" ozite lining and this estimate includes necessary binding and laying. The samples submitted with this is the present stock. Please advise as carpet is being reserved."

The answer admits the making of the contract and alleges that plaintiff was informed by defendant that one of the rugs delivered, namely, the one designated for the entrance hall, was not of the size specified, and that defendant was advised by plaintiff that the entrance hall rug could not be furnished from present stock and not within a period from six to eight weeks thereafter; and plaintiff was notified that defendant elected to rescind the contract and was directed to remove the rugs from defendant's premises, which it failed to do; and, by reason of the failure of the plaintiff to perform its contract, it was necessary for the defendant to purchase other rugs on or about February 4, 1929; and, by reason of the failure of the plaintiff to remove the rugs from defendant's premises, the defendant was put to the expense of removing the rugs, cartage and storage, for which a counterclaim is interposed.

The material was furnished from present stock of the Molloy-Skelly Carpet Company, Inc., and measurements were made by an employee of that company, and the rugs were manufactured and on January 17, 1929, delivered to the defendant and laid in the designated rooms. Concededly the rug for the front entrance hall was three feet by nine feet, and not three feet by eighteen feet. On January 19, 1929, the defendant wrote to the plaintiff: "The rugs delivered to 76 Remsen Street, Brooklyn, on estimate dated January 7, 1929, are not in accordance with the terms of

that estimate and are, therefore, not acceptable. *The entrance hall rug is not the size ordered.* This is to notify you to take the rugs up and unless they are removed by Tuesday noon, January 22, 1929, I shall do so. I will have them stored and they will be delivered to you anytime thereafter upon the payment of storage charges and of the cost of labor for removing them."

On January 22, 1929, after talking with a representative of the plaintiff, defendant wrote: " These rugs have been rolled separately and are at present in our dining room. * * * In the event that they have not been removed by the close of business on Saturday, January 26, 1929, I will send the rugs to public storage."

On January 30, 1929, after talking with a representative of the Molloy-Skelly Carpet Company, Inc., the defendant wrote: " The rugs are stored with the Eagle Warehouse and Storage Company, 28 Fulton Street, Brooklyn, N. Y. The rugs are at your disposal, of course, at any time."

On February 21, 1929, after plaintiff had offered delivery of a new rug of the size of three feet by eighteen feet, which had been refused, the defendant wrote: " As advised the rugs are stored with the Eagle Warehouse and Storage Company, 28–44 Fulton Street, Brooklyn, New York. I shall hold them in storage for a reasonable time. If after the expiration of such time, you do not indicate disposition of them, I shall have them removed and sold at public auction. The proceeds I shall apply to the payment of auctioneer's fees, and carting and storage. The balance, if any, I will remit to you. I will of course give you ample notice in advance of the sale at public auction."

On January 29, 1929, the rugs were sent to the storage warehouse in the name of the defendant, the receipt was issued in his name and was retained by him and the charges paid by him. While the plaintiff did not accede to the defendant's demand to take back the rugs, it did acquiesce in his objection that the entrance hall rug was not of the size ordered, and it promised the defendant to supply such a rug of the proper size as soon as possible. The Molloy-Skelly Carpet Company, Inc., having located more of the same material in New York, manufactured a new rug of the size of three feet by eighteen feet required for the entrance hall, and on February 13, 1929, the plaintiff offered delivery of such new rug at the defendant's premises, which was refused. On February 16, 1929, the plaintiff notified the defendant of the offer of delivery of the new rug and the refusal, and demanded payment of the entire amount of the written estimate.

In these letters to the plaintiff the defendant made no complaint of the time of delivery, or of the delay incident to procuring a rug

of the proper size, or that it would have to be made of other than present stock. At the most, the plaintiff made an unintentional mistake, but this mistake did not *ipso facto* constitute a breach of contract. (*Pierson* v. *Crooks*, 115 N. Y. 539.) The plaintiff was bound to supply a proper rug and could not have been put in default until afforded a reasonable opportunity so to do. (*Van Iderstine Co.* v. *Barnet L. Co.*, 242 N. Y. 425.) The plaintiff had a right to replace the objectionable rug by one conforming to the written estimate (*Portfolio* v. *Rubin*, 196 App. Div. 316; *Gumbinsky Bros. Co.* v. *Smalley*, 203 id. 661), and had a reasonable time within which so to do. (*Mutual Chemical Co.* v. *Marden, Orth & Hastings Co.*, 235 N. Y. 145.)

In these letters of the defendant there was no notice of rescission or a fixing of a reasonable time, specified in the notice, for completion of performance. (*Taylor* v. *Goelet*, 208 N. Y. 253.) The contract was executory and was silent as to the date of performance. Therefore, performance was to be made within a reasonable time and time was not of the essence. (*Brede* v. *Rosedale Terrace Co.*, 216 N. Y. 246.) Whether in such a contract performance has been made within a reasonable time is a question of fact. (*Trainor Co.* v. *Amsinck & Co.*, 236 N. Y. 392.) It may depend upon many circumstances; the attitude of the parties; the good faith of the seller. (*Murray Co.* v. *Lidgerwood Mfg. Co.*, 241 N. Y. 455.) In *Taylor* v. *Goelet* (*supra*) the Court of Appeals stated that " Where an executory contract fixes the time within which it is to be performed and performance within that time is waived by the parties to the agreement, neither party can thereafter rescind the contract on account of such delay without notice to the other requiring performance within a reasonable time, *to be specified in the notice,* or the contract will be abrogated. By the waiver, time as an essential element of the contract has been removed therefrom, but it can be restored by a reasonable notice demanding performance and stating that the contract will be rescinded if the notice is not complied with. (*Lawson* v. *Hogan*, 83 N. Y. 39; *Schmidt* v. *Reed*, 132 N. Y. 108.) * * *. The rule would seem to apply as aptly to contracts which when made leave indefinite the time of performance as to contracts from which time as an essential element has been removed by acquiescence of the parties."

The letters from the defendant do not comply with this rule. Nowhere did the defendant give a notice in writing to make time of the essence of the contract, or to rescind the contract on the ground of delay, failure or refusal to perform, or to require performance within a reasonable time, specified in the notice. The only ground given for the refusal of the carpets was: " The entrance

hall rug is not of the size ordered." The plaintiff offered to replace it with a rug of the required dimensions as soon as possible, mentioning a period from six to eight weeks as possibly necessary, if the material could not be procured in this country and had to be imported from Scotland. Even if the defendant were unwilling to wait that length of time, unless certain conditions were accepted, he failed to give notice of rescission (*Sorensen* v. *Keesey Hosiery Co.*, 244 N. Y. 73), on the ground of such delay and to require performance within a reasonable time, specified in the notice. It appears, if the defendant had given such notice to the plaintiff, requiring the delivery of a rug of proper dimensions within a reasonable time, specified in the notice, the plaintiff would have complied with such notice, as the plaintiff actually tendered delivery of such rug within a reasonable time, as it had a right to do. (*Lowinson* v. *Newman*, 201 App. Div. 266; 2 Williston Sales [2d ed.], § 459.) In the absence of a rescission of the contract by the defendant upon the ground of defective delivery, the plaintiff was justified in keeping the contract alive and, having tendered delivery of a proper rug within a reasonable time, is entitled to enforce the written contract.

It is also claimed by the plaintiff, while it might be that the defendant was under no duty to return the carpets delivered on January 17, 1929, if his rejection were justified, yet his use of them for a period of days after such rejection and placing them in a storage warehouse in his own name, retaining the warehouse receipt, paying the charges and threatening to sell them at public auction, was a failure to keep his rejection good and an exercise of a dominion over the goods wholly inconsistent with the plaintiff's ownership thereof and constituted an acceptance, at least of those carpets which complied with the contract. (*White* v. *Schweitzer*, 221 N. Y. 461; *Hubbard* v. *Rockaway Lunch Company, Inc.*, 131 Misc. 53.) The statute provides: " * * * when the goods have been delivered to him and he does any act in relation to them which is inconsistent with the ownership of the seller, * * * " the buyer is deemed to have accepted the goods. (Pers. Prop. Law, § 129, as added by Laws of 1911, chap. 571.) It is true, if he were justified in his rejection of the carpets, the defendant was not bound to return them (Pers. Prop. Law, § 131), but the statute is silent as to any authority in the buyer to sell them unless, in case of breach of warranty, he has paid a part or all of the purchase price. (Pers. Prop. Law, § 150, as added by Laws of 1911, chap. 571.) It would seem, if his rejection were justified, that the buyer could return the goods, or he could offer to return them and, if refused, he could hold the goods as the seller's bailee, and be charge-

able only with reasonable care and conduct toward them, or he could deliver them to another bailee, a warehouseman or carrier, for the seller's account, notifying the seller of his action, and either course would be a sufficient discharge of his duty towards the goods under the statute and would not constitute an acceptance. But the defendant did not follow either course. Instead, he stored the goods in a public warehouse in his own name, retained the receipt in his own name, paid the storage charges, and threatened to sell the goods at public auction, if the plaintiff failed to call for them, to satisfy charges that he incurred evidently in keeping the goods from the possession of the plaintiff. It is claimed by the defendant that in a former decision this court has approved the course followed by him. (*Gant* v. *Cutting-Larson, Inc.*, 110 Misc. 484.) In that action the plaintiff, a purchaser, rescinded a contract for the purchase of an automobile and offered to return it to the defendant, the seller, who refused to accept it. In a letter the purchaser advised the seller of the tender and refusal of the car and stated: " The car in question is now held for your account and has today been placed in ' dead storage ' at the Apthorp Garage, 214 West 80th Street, New York, for your account and at your expense." Later the purchaser insured the car against the perils of theft and fire and notified the seller of such action and that the seller would be held liable for the expense incurred. The seller made no complaint of the arrangement which the purchaser had made for its benefit. In that action the plaintiff was allowed the expense of storage and insurance, after she had recovered judgment in a prior action for the purchase price paid, which had been affirmed and collected from the defendant. In the present action there is no evidence that the defendant had the carpets cleaned and wrapped for storage, or that he procured any insurance against the perils of theft and fire. The undisputed evidence discloses that the defendant did not avail himself of the remedies provided by statute, and that the conduct of the defendant amounted to an exercise of a dominion over the goods wholly incon- sistent with the vendor's ownership and constituted an acceptance. (*White* v. *Schewitzer; Hubbard* v. *Rockaway Lunch Co., Inc., supra.*)

It follows, therefore, that the plaintiff is entitled to recover the sum of $532.13 and to a dismissal of the counterclaim. Ten days' stay.