**UNITED STATES of America,
Plaintiff,**

v.

**Sol PETASCHNICK, Sam Shumow, d/b/a Winnebago Auto Replacement Co., Betty Shumow and Albert Duckler, Defendants.**

**Civ. A. No. 5635.**

United States District Court
E. D. Wisconsin.
July 26, 1956.

Edward G. Minor, U. S. Atty., Arnold W. F. Langner, Jr., Asst. U. S. Atty., Milwaukee, for plaintiff.

B. F. Saltzstein, Harry J. Weisfeldt and Howard G. Brown, Milwaukee, Wis., for defendants.

GRUBB, District Judge.

This action is brought to recover damages because of alleged fraudulent trick, device or scheme whereby defendant Sol Petaschnick is alleged to have represented himself to be the owner of more than fifty percent of the Winnebago Auto Replacement Co. in purchases from the War Assets Administration, thereby obtaining a veteran's priority purchase status and for moneys which it is claimed the defendants owe the plaintiff in connection with purchases from the War Assets Administration. Total damages in the amount of $82,997.08 are demanded.

Defendant Winnebago Auto Replacement Co. answered denying any fraudulent trick, scheme or device; admitting that the defendant Petaschnick represented that he was the owner of more than fifty percent of the stock of Winnebago Auto Replacement Co., a corporation, although he was not such owner; admitting that he received veteran's priority purchase status, that he, individually or in association with Winnebago Auto Replacement Co., purchased property under priority as a veteran; alleg-

ing that the purchase price has been paid; denying that veteran's priority was used in excess of the purchase price in the sum of $1,675.86, but denying that that sum is owing to the plaintiff from the defendant Petaschnick; and alleging that one-half of any profit on the sale of such surplus property accrued to Petaschnick as a veteran.

As to the second cause of action, it is admitted that purchases were made as set forth in the answer; alleges that payment of $435,551.76 was made as against purchases of $407,506.86, alleging an over-payment of $28,044.90, and that there is a credit balance due Winnebago Auto Replacement Co. after further purchases of $6,978.15.

Six counterclaims are interposed. The first alleges that there is due and owing to Winnebago Auto Replacement Co. from plaintiff the sum of $6,978.15 on account of payments against purchases. The second refers to an alleged sublease between Winnebago Auto Replacement Co. and plaintiff, and alleges there is due and owing the sum of $9,924.43 in rents. The third has to do with an alleged agreement with reference to remodelling and demands damages against the plaintiff in the sum of $32,769. The fourth relates to an order of semi-trailers totalling $10,785 and demands damages in the sum of $1,000. The fifth is with reference to alleged purchase of gasoline engines which were never shipped and demands damages in the sum of $75,325. The sixth relates to alleged purchase of gasoline driven air compressors and alleged failure to make delivery of certain of these compressors and demands damages in the sum of $64,484.

The prayer demands judgment and dismissal of the complaint and that the defendants recover judgment against plaintiff on account of the counterclaims in the sum of $190,480.58.

Plaintiff's motion is that the counterclaims be stricken for the reason that the Court does not have jurisdiction to hear claims against the government exceeding $10,000 in amount, and upon the further ground that the Court does not

have authority to grant affirmative relief against the United States in an action brought by the United States against the defendant. There follows other motions demanding that certain counterclaims and certain paragraphs of certain counterclaims be stricken.

 It is clear that the Court does not have jurisdiction to entertain counterclaims against the government wherein the demand is for more than $10,000. Therefore, it is ordered that the third, the fifth and the sixth counterclaims be, and they are hereby, stricken.

With reference to the other counterclaims, the Court finds that there is a conflict of authority as to whether this Court has jurisdiction to entertain them, they being for less than $10,000. It is conceded that the defendant may use any claim against the government as an offset and the counterclaims stricken can be repleaded if the defendants see fit as offsets. It is also conceded that the other counterclaims for less than $10,000 may be used as offsets if properly repleaded as such. On the question as to whether the counterclaims under $10,000 can stand as counterclaims against the government under the Tucker Act, 28 U.S.C.A. § 1346(d), there is a conflict in authority.

The United States Supreme Court in United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888, held that such counterclaims would not lie so as to empower the County Court, wherein the government had filed its claim, to give affirmative counter-relief against the government. Thereafter, in United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523, the Court permits a cross-complaint for affirmative relief against the government. That action was brought under the Federal Tort Claims Act and strictly speaking does not bear upon the construction of the Tucker Act. The Court in its decision in the Yellow Cab Co. case takes a more "liberal" attitude with reference to suits against the sovereign and indicates a tendency to get away from the strict construction of statutes affording relief against the government. In National City Bank of New York v. Republic of China, 348 U.S. 356, at page 359, 75 S.Ct. 423, at page 426, 99 L.Ed. 389, the Court speaking through Mr. Justice Frankfurter discusses the problem and points out the modern trend, stating:

"But even the immunity enjoyed by the United States as territorial sovereign is a legal doctrine which has not been favored by the test of time. It has increasingly been found to be in conflict with the growing subjection of governmental action to the moral judgment. A reflection of this steady shift in attitude toward the American sovereign's immunity is found in such observations in unanimous opinions of this Court as 'Public opinion as to the peculiar rights and preferences due to the sovereign has changed', Davis v. Pringle, 268 U.S. 315, 318, 45 S.Ct. 549, 550, 69 L.Ed. 974; 'There is no doubt an intermittent tendency on the part of governments to be a little less grasping than they have been in the past * * *,' White v. Mechanics' Securities Corp., 269 U.S. 283, 301, 46 S.Ct. 116, 118, 70 L.Ed. 275; the present climate of opinion * * * has brought governmental immunity from suit into disfavor * * *,' Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 391, 59 S.Ct. 516, 519, 83 L.Ed. 784."

The Court added, 348 U.S. at page 360, 75 S.Ct. at page 426:

" * * * The substantive sweep of amenability to judicial process has likewise grown apace.

"The outlook and feeling thus reflected are not merely relevant to our problem. They are important. The claims of dominant opinion rooted in sentiments of justice and public morality are among the most powerful shaping-forces in lawmaking by courts. Legislation and adjudication are interacting influences

in the development of law. A steady legislative trend, presumably manifesting a strong social policy, properly makes demands on the judicial process. See James M. Landis, Statutes and the Sources of Law, in Harvard Legal Essays (1934), p. 213 et seq.; Harlan F. Stone, The Common Law in the United States, 50 Harv.L.Rev. 4, 13–16."

These latest decisions of the United States Supreme Court reveal its changing attitude and its present attitude of being liberal in permitting relief to the citizen against the government.

There is a decided conflict in the decisions of the Courts of Appeal and of the lower courts on this problem. The implication in United States v. Pure Oil Co., 7 Cir., 1943, 135 F.2d 578, is that such counterclaims are allowable. This is the attitude of the Court of Appeals of the First Circuit, United States v. Silverton, 1952, 200 F.2d 824. As opposed to this view is the attitude of principally the Court of Appeals of the Second Circuit and the lower courts of that Circuit as evidenced, among others, in United States v. Nipissing Mines Co., D.C., 206 F. 431 and numerous other decisions.

In this situation, it is the belief of this Court that at the present time the attitude of the United States Supreme Court and the holdings of the Court of Appeals of the Seventh Circuit are such that the counterclaims for less than $10,000 should be permitted to stand as counterclaims.

It is hereby ordered that counterclaims numbered Third, Fifth and Sixth be, and they are hereby, stricken as counterclaims without prejudice to the right of the defendants to amend and plead them as offsets.

All other motions, including the motions to strike counterclaims numbered First, Second and Fourth are hereby denied.