**UNITED STATES of America,**
**Plaintiff,**

v.

**Mark Kenneth FRANK, d/b/a M. K.**
**Frank Iron & Steel Products**
**Company, Defendant.**

United States District Court
S. D. New York.
July 25, 1962.

Robert M. Morgenthau, U. S. Atty., by Philip J. Ryan, Jr., New York City, for plaintiff.

Milton B. Pfeffer, New York City, for defendant.

EDELSTEIN, District Judge.

This is an action brought by the United States of America to recover the sum of $5,881.26. The dispute arises out of a contract between defendant and Nickel Processing Corporation of New York (Nickel), interim contractor and agent for the United States. The complaint alleges that defendant and Nickel entered into a contract whereby defendant was to deliver certain railroad splice angle bars. The bars were delivered to a pier in New York and then shipped to Cuba. Nickel paid the purchase price as agreed upon in the contract. The complaint alleges that when the bars were inspected subsequent to their arrival in Cuba, it was discovered that they did not comply with the specifications required by the contract. It is alleged that defendant was notified that Nickel rescinded the sale and that it was holding the goods for disposition as defendant might direct. The complaint also alleges that Nickel, which operated the government plant in Cuba as interim contractor for the United States, assigned its interest in the claim against defendant to the United States. The complaint seeks judgment for the return of the purchase price plus expenses incurred in shipping the bars to Cuba. Defendant answered, admitting the contract, the shipment and payment, but denying that the goods were not as contracted for. The answer also sets forth two affirmative defenses: (1) Prior inspection and approval by Nickel, and (2) laches. Defendant now moves for leave to amend his answer to interpose a counterclaim and set-off based upon facts discovered only recently. The government opposes the motion on several grounds. It contends that the proposed counterclaim may not be pleaded at this late date; that it is insufficient as a matter of law; that the court is without jurisdiction to entertain the counterclaim; and that even assuming it may be pleaded as

a set-off, 28 U.S.C. § 2406 (1958) precludes it at this time.

Defendant's motion is brought pursuant to Rule 13(f), Fed.R.Civ.P.[1] The affidavit of defendant's general manager alleges that after notification that the splice angle bars were being held for disposition, nothing more was heard from plaintiff or Nickel. Subsequently, the Castro regime seized power in Cuba. When Nickel removed its employees from Cuba and abandoned the mining site as a result of the revolutionary upheaval, the splice angle bars were among goods left in Cuba. The affidavit alleges that defendant first learned of this in January of 1962 when the matter came up in pretrial discussions. Defendant urges that since the government did not notify him of the fate of the bars until recently, he was unaware that a counterclaim and set-off were available. He now seeks to set up as a counterclaim the value of the goods that were lost when Nickel abandoned the Cuban mine.

In support of his motion, defendant has not set forth facts showing "oversight, inadvertence, or excusable neglect," but urges instead that the clause of Rule 13(f) "when justice requires" is applicable to the circumstances at bar. It has been observed that this clause "is an independent ground upon which the court may grant leave to set up the counterclaim by amendment." Smith Contracting Corp. v. Trojan Constr. Co., 192 F.2d 234, 236 (10th Cir.1951). Defendant's position is that granting the amendment will not prejudice the government while failure to permit the amendment would bar an otherwise meritorious claim. The government urges that it will be prejudiced in that new investigation and additional trial preparations will be necessary. I am not persuaded that plaintiff will be prejudiced by an amendment at this time. It would seem that all of the facts necessary to meet the claim stated in the amendment are within the control

---

1. Rule 13(f), Fed.R.Civ.P. 28 U.S.C. provides:

 "(f) Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

·of plaintiff. Sound judicial policy requires that all claims arising out of a transaction be litigated in one action. And the court is not unmindful of the admonition in Rule 15, Fed.R.Civ.P. that leave to amend "shall be freely given when justice so requires."

▪▪ The main thrust of the plaintiff's argument, however, is that even if the court were disposed to grant leave to amend, it may not do so for it lacks jurisdiction over the proposed counterclaim. It is the government's contention that the Tucker Act, 28 U.S.C. § 1346(a) (1958), which would provide the jurisdictional basis for an independent action against the United States arising out of a contract, is not broad enough to encompass jurisdiction for counterclaims against the United States. This contention is based upon the doctrine of sovereign immunity, that "without specific statutory consent, no suit may be brought .against the United States." United States v. Shaw, 309 U.S. 495, 500–501, ·60 S.Ct. 659, 84 L.Ed. 888 (1940); Nassau Smelting Works v. United States, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190 (1924). Plaintiff points out that while the Tucker Act, 28 U.S.C. § 1346(c) (1958), grants jurisdiction to hear counterclaims interposed by the United States, no reciprocal provision authorizing counterclaims against the United States is .available. See United States v. Wissahickon Tool Works Inc., 84 F.Supp. 896, 902 (S.D.N.Y.1949), aff'd, 200 F.2d 936

(2d Cir.1952). Thus, plaintiff is contending for the traditional rule that no counterclaim seeking an affirmative judgment against the United States may be maintained "unless it is predicated on a claim to which the United States has given its statutory consent to be sued in the court where the counterclaim is interposed, and where this consent includes a 'counterclaim' (as distinguished from an 'original' action) against the sovereign." 3 Moore, Federal Practice 76 (2d ed. 1948). Defendant, of course, urges that the counterclaim may be asserted against the United States.[2]

▪ The rule in this Circuit has been that the district court has no jurisdiction to entertain a counterclaim under the Tucker Act. United States v. Nipissing Mines Co., 206 F. 431 (2d Cir.1913), cert. dismissed, 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582 (1914); United States v. Anasae International Corp., 197 F. Supp. 926 (S.D.N.Y.1961); United States v. Wessel, Duval & Co., 115 F. Supp. 678 (S.D.N.Y.1953); United States v. Double Bend Mfg. Co., 114 F.Supp. 750 (S.D.N.Y.1953); Graske v. Johnson, 97 F.Supp. 678 (S.D.N.Y.1951). This rule has not commended itself to some of the other Circuits. See, e. g., United States v. Silverton, 200 F.2d 824 (1st Cir. 1952); Thompson v. United States, 250 F.2d 43 (4th Cir. 1957); United States v. Springfield, 276 F.2d 798 (5th Cir. 1960); United States v. Martin, 267 F.2d 764 (10th Cir. 1959);

2. Defendant bases his argument on the principle that an assignee of a chose in action stands in the shoes of his assignor. He contends that the assignment came to the United States burdened with the counterclaim existing against Nickel and that to permit the counterclaim would not be an enlargement of the right to counterclaim against the United States beyond the limits now fixed by law. Rule 13(d), Fed.R.Civ.P. This hornbook principle must, however, give way to the principle that "without specific statutory consent, no suit may be brought against the United States." United States v. Shaw, 309 U.S. 495, 500–501, 60 S.Ct. 659, 84 L.Ed. 888 (1940); Dalehite v. United States, 346 U.S. 15, 30, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); Feres v.

United States, 340 U.S. 135, 139, 71 S. Ct. 153, 95 L.Ed. 152 (1950). Moreover, the government contended at the oral argument that it was not really an assignee, but that Nickel was acting as agent for the United States. The formal assignment was executed in order to provide an extra measure of protection for the assertion of the claim. In answer to a question from the bench, counsel for defendant conceded that there was a rubber stamp imprint on the contract which indicated that the United States was the principal. Thus, the defendant knew that the United States was a party to the contract and his claim for loss of the goods is a claim against the United States.

United States v. Buffalo Coal Mining Co., 170 F.Supp. 727 (D.Alaska 1959); United States v. Petaschnick, 143 F.Supp. 206 (E.D.Wis.1956). Thus, "the limits now fixed by law"[3] of the right to assert counterclaims against the United States appear to be in a state of flux.[4] Reevaluation of the Nipissing rule must await an appropriate case, since an examination of defendant's proposed counterclaim indicates that it is not a counterclaim which demands affirmative relief.

Seizing upon the *ad damnum* clause of the proposed amendment with its conjunctive demand for dismissal and damages,[5] the government urges that the pleading seeks affirmative relief which the court is powerless to grant. But it

3. Rule 13(d), Fed.R.Civ.P. provides:
 "(d) Counterclaim against the United States. These rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof."

4. The question of whether the traditional limitation on counterclaims against the United States under the Tucker Act is justified has been the subject of consideration of late by commentators as well as courts. See Casey, Counterclaims Against the United States Under the Tucker Act: A Dilemma for Defendants, 25 Geo.Wash.L.Rev. 315 (1957); Note, 73 Harv.L.Rev. 602 (1960); Note, 103 U.Pa.L.Rev. 980 (1955); Note, 55 Colum.L.Rev. 930 (1955); Note, Governmental Immunity from Counterclaims, 50 Colum.L.Rev. 505 (1950).

 The Nipissing rule was buttressed by United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940), which held that by filing a claim in a state probate proceeding, the United States did not subject itself to a cross claim which exceeded the amount of the government's own claim. See also United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). While continuing to follow the Nipissing rule prohibiting Tucker Act counterclaims, courts in the Second Circuit added another argument to the rationale. This was that while the Tucker Act gave the United States the right to interpose a counterclaim when sued, 28 U.S.C. § 1346(c) (1958), the statute provided no reciprocal provision for counterclaims by a private individual in a suit by the United States. United States v. Anasae International Corp., 197 F.Supp. 926 (S.D.N.Y.1961); United States v. Double Bend Mfg. Co., 114 F.Supp. 750 (S.D.N.Y.1953); United States v. Wissahickon Tool Works, Inc., 84 F.Supp. 896 (S.D.N.Y.1949), aff'd., 200 F.2d 936 (2d Cir.1952). The tide began, however, to turn against this strict view forbidding counterclaims. In United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951), the Supreme Court permitted a defendant to implead the United States for contribution as a joint tortfeasor under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1958). Relying on Yellow Cab and distinguishing Shaw, the district courts began to allow counterclaims to be asserted against the United States under the Federal Tort Claims Act. E.g., United States v. Gonzalez, 154 F.Supp. 958 (D.P.R.1957); United States v. New York City Omnibus Corp., 128 F.Supp. 86 (S.D.N.Y. 1955); United States v. Rosati, 97 F. Supp. 747 (D.N.J.1951). Finding Yellow Cab to be a "persuasive analogy," the First Circuit declined to follow Nipissing and held that a counterclaim may be asserted against the United States under the Tucker Act. United States v. Silverton, 200 F.2d 824, 827 (1st Cir. 1952). Other Circuits similarly declined to apply the restrictive rule of Nipissing and chose to follow the liberal interpretation of Silverton in dealing with counterclaims under the Tucker Act. See cases cited in text. In light of this discernible trend and in light of recent pronouncements by the Supreme Court indicating a relaxation of the strict doctrine of sovereign immunity, see National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955); United States v. Yellow Cab Co., supra, it is questionable whether this Circuit will continue to adhere to the strict Nipissing doctrine. Moreover, the desirability of litigating all claims between the parties in a single lawsuit, as exemplified by the policy underlying Rule 13 would seem to portend an overruling of the Nipissing rule.

5. That clause reads as follows:
 "WHEREFORE, defendant demands judgment against plaintiff in the sum of $4,675.00 *and* further demands judgment dismissing the complaint herein with the interest, costs and disbursements of this action." (emphasis added)

is necessary to go behind the language and to analyze the nature of the claim. This is an action for breach of warranty where the goods have passed to the buyer and where the seller has received the purchase price. The plaintiff is seeking to recover the price which has been paid. New York Personal Property Law, McKinney's Consol.Laws, c. 41, § 150(1) (d) (4). The defenses to this claim are a denial of the breach, laches, and inspection and approval. New York Personal Property Law, § 150(3). If plaintiff should fail to prevail on its claim, then the complaint will be dismissed and defendant will retain the purchase price. Defendant will then have as much as he is entitled to have under this contract and his counterclaim will not even be considered on the merits. If, however, the government does prevail on its claim for breach of warranty, it will be entitled to a return of the purchase price, plus the damages incurred in shipping the goods to Cuba. New York Personal Property Law, § 150(1) (d), (6). Then and only then will the trial court turn to a consideration of the counterclaim. The counterclaim in effect says that if the plaintiff is entitled to recover the price because a warranty has been breached, then defendant is entitled to return of the goods. And since plaintiff is unable to return the goods due to its fault in abandoning them and failing to remove them to a place of safety, defendant is entitled to receive the value of the goods. See New York Personal Property Law § 150(3). Thus, defendant is claiming nothing more than a recoupment up to the value of the goods. The amount demanded by defendant is less than the amount of the government's claim, for it does not include the cost of shipping. Moreover, defendant's claim could not be the basis of an independent action at this time, absent a return of the purchase price. The counterclaim is clearly defensive in nature and does not seek affirmative relief, notwithstanding the inarticulate drafting of the proposed pleading in the conjunctive instead of the disjunctive.

Plaintiff concedes that in a suit by the United States, "a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim." United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 511, 60 S.Ct. 653, 84 L.Ed. 894 (1940); United States v. Wessel, Duval & Co., 115 F.Supp. 678, 687 (S.D.N.Y. 1953.). "This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). Nevertheless, plaintiff contends that even if the counterclaim may be interposed as a set-off, it would be a futile act since 28 U.S.C. § 2406 (1958) will bar recovery by defendant.[6] The counterclaim, however, is in the nature of a recoupment and not a set-off, since it arises out of the same transaction as plaintiff's claim. See 3 Moore, Federal Practice, 7 n. 1 (2d ed. 1948). The distinction is significant, since recoupment may be set up in a counterclaim against the United States without statutory authority, while set-offs and other independent claims require a statutory waiver of sovereign immunity. Since recoupment is thus available without statutory authorization, the effect of 28 U.S.C. § 2406 (1958) is to permit the interposition of claims arising out of unrelated transactions by way of set-off. Even if § 2406 can be construed to apply to the recoupment counterclaim here, compliance with § 2406 need not be pleaded in the answer. The section mere-

---

6. 28 U.S.C. § 2406 (1958) provides:
"§ 2406. Credits in actions by the United States; prior disallowance.
In an action by the United States against an individual, evidence supporting the defendant's claim for a credit shall not be admitted unless he first proves that such claim has been disallowed, in whole or in part, by the General Accounting Office, or that he has, at the time of the trial, obtained possession of vouchers not previously procurable and has been prevented from presenting such claim to the General Accounting Office by absence from the United States or unavoidable accident."

ly provides a rule of evidence and not a rule of pleading. United States v. Standard Aircraft Corp., 16 F.2d 307 (S.D. N.Y.1926); United States v. Wessel, Duval & Co., supra; United States v. Maguire Industries, Inc., 99 F.Supp. 326 (S.D.N.Y.1951); United States v. Boris, 122 F.Supp. 936 (E.D.Pa.1954); United States v. Heard, 32 F.Supp. 39 (W.D.Va. 1940); see United States v. Hawkins, 35 U.S. (10 Pet.) 124 (1836) (forerunner statute); see also Reviser's Note to 28 U.S.C. § 2406. Thus, defendant may set up a defensive plea of recoupment in his amended answer.

 Plaintiff's final objection is that the proposed amendment fails to state a claim. The parties agree that the status of a buyer in possession of the goods who rescinds a sale is that of a bailee.[7] Plaintiff contends that it or Nickel was merely a gratuitous bailee chargeable only with gross negligence, and that defendant's failure to allege "gross negligence" is a fatal defect in its proposed pleading. Except for plaintiff's statement in its memorandum that Nickel became a gratuitous bailee, there is no showing that such was the nature of the bailment. In examining the New York cases under Personal Property Law, § 150(5), one finds that they generally do not discuss the nature of the bailment created. See Kahn v. J. C. Management Corp., Sup., 59 N.Y.S.2d 547 (S.Ct.1944), aff'd., 286 App.Div. 1055, 59 N.Y.S.2d 625 (2d Dept. 1945); Jones v. Healy, 237 App.Div. 264, 261 N.Y.S. 464 (2d Dept. 1923); Levy v. Chonavitz, 163 N.Y.S. 658 (Co.Ct.1917); but cf. Davis v. Gifford, 182 App.Div. 99, 169 N.Y.S. 492 (1st Dept., 1918) (case does not appear to be under Sales Act). "The statute does not go into any detail as to the nature of the bailment created, whether the same be for hire, gratuitous or for mutual benefit * * *." Gant v. Cutting-Larson Co., 110 Misc. 484, 486, 181 N.Y.S. 581, 582 (Mun.Ct.1919). But in Gant, an action by the rescinding buyer to recover charges for the bailment, the court awarded judgment to the buyer and characterized him as a bailee for hire. See James McCutcheon & Co. v. Kimball, 135 Misc. 299, 303–304, 238 N.Y.S. 102, 107 (Mun.Ct.1929) ("hold the goods as the seller's bailee, and be chargeable only with reasonable care and conduct toward them,"). And since the buyer is entitled to be paid for expenses incurred in storing the goods, 3 Williston, Sales, § 610 at 354 (rev. ed. 1948), this right seems inconsistent with the defined nature of a gratuitous bailment, the essence of which is the absence of any compensation to the bailee. See Dalton v. Hamilton Hotel Operating Co., 242 N.Y. 481, 486–487, 152 N.E. 268, 269–270 (1926); Long Island R. Co. v. New York Central No. 25, 182 F.Supp. 100, 104 (S.D.N.Y.1960); Dobie, Bailments and Carriers 53 (1914); Paton, Bailment in the Common Law 93 (1952). Thus plaintiff's contention that the proposed amendment is insufficient as a matter of law cannot be sustained. The nature of the bailment and the duties of the bailor and bailee under the circumstances are matters which are best left for the trial court to determine upon a more complete exposition of the facts of the case.

 Although defendant has incorrectly denominated his proposed pleading as a "counterclaim and partial offset," he is entitled to raise the defensive matter therein contained by way of recoupment. Rule 8(c), Fed.R.Civ.P. provides, in part, that "when a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper

7. New York Personal Property Law, § 150 (5) provides:
 "Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section one hundred and thirty-four."

designation." The proposed pleading will therefore be treated as a claim for recoupment. The *ad damnum* clause of the proposed pleading will be deemed to demand relief in the disjunctive, instead of the conjunctive as presently framed.

Accordingly, defendant's motion for leave to file an amended answer is granted with the modifications stated. It is So Ordered. No settlement necessary.