**OHIO BARGE LINE, INC., a corporation, Plaintiff,**

v.

**DRAVO CORPORATION, a corporation, Defendant and Third-Party Plaintiff,**

v.

**WESTINGHOUSE AIR BRAKE COMPANY, a corporation, Third-Party Defendant.**

No. 71–33.

United States District Court,
W. D. Pennsylvania.

May 11, 1971.

Blair S. McMillin, William Shannon Lerach, Reed Smith Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Bruce R. Martin, Pittsburgh, Pa., for defendant.

## OPINION

WEIS, Jr., District Judge.

Few admiralty doctrines have received more criticism and with so little effect as that which holds that agreements for the construction of vessels are not maritime contracts and, hence, not within the purview of admiralty jurisdiction.[1] This holding has been repeated many times by decisions of the Supreme Court[2] and is now accepted as firmly established, albeit arguably inconsistent and illogical.

The defendant Dravo has invoked the principle once again as the basis for its Motion to Dismiss the plaintiff's suit in this court.

The Complaint asserts that the defendant designed and built a towboat known as the M/V Steel Express at the instance of the plaintiff and delivered it on April 12, 1966. Two years later, specifically on April 2, 1968, a filter in the clutch control system caused an explosion on the vessel while it was in navigation on the Ohio River near Bellaire, Ohio. The towboat went out of control and struck several barges and the landing to which they were moored, all owned by the Delta Concrete Company.

1. Admiralty Jurisdiction & Ship-Sale Contracts, 6 Stanford L.Rev. 540 (1954); Black, Admiralty Jurisdiction: Critique and Suggestions, 50 Columbia L.Rev. 259 (1950); Hough, Admiralty Jurisdiction— Of Late Years, 37 Harv.L.Rev. 529 (1924).

2. Thames Towboat Co. v. The Francis McDonald, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920); North Pac. S. S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510 (1919); The Winnebago, 205 U.S. 354, 27 S.Ct. 509, 51 L.Ed. 836 (1907); People's Ferry Co. of Boston v. Beers, 61 U.S. 393, 15 L.Ed. 961 (1857).

The plaintiff settled the claim of Delta for the sum of $75,000 and took an assignment from it. Damages are now asserted against the defendant for the cost of the repairs to the Steel Express as well as the amount expended in settlement of the damage to the landing and barges.

Ohio Barge Line alleges that it was an R–2 filter in the clutch control system of the towboat which was defective and urges the existence of liability on the part of the defendant on eight separate theories:

1. Strict liability under the provisions of Section 402A of the Restatement of Torts.

2. Assignment of the claim of the landing owner.

3. Express warranty.

4. Implied warranty.

5. Indemnity provisions of the construction contract between the plaintiff and Dravo.

6. Indemnification under general theories of primary and secondary negligence.

7. Unjust enrichment.

8. Unseaworthiness on delivery of the towboat to the plaintiff.

Defendant claims that there is no jurisdiction in admiralty and there being no diversity between the parties, no grounds for this court to entertain the suit. Dravo contends flatly that since the relations between the plaintiff and defendant arose as a result of a contract for the construction of the towboat, no amount of maneuvering by the plaintiff will enable it to sail past the jurisdictional reef.

However, the matter is not quite as simple as the defendant's position would indicate. We find no authority for the proposition that simply because the parties had entered into a contract that this encompasses the sum total of their duties and responsibilities to each other.

■ Furthermore, while the defendant is free to invoke the contract as an affirmative defense, this does not ipso facto determine the jurisdictional problem. Armour & Co. v. Ft. Morgan S. S. Co., 270 U.S. 253, 46 S.Ct. 212, 70 L.Ed. 571 (1926).

■ McKee v. Brunswick Corporation, 354 F.2d 577 (7th Cir. 1965) recognizes that admiralty jurisdiction applies to suits brought under Section 402A of Restatement of Torts. To the same effect, see In Re Alamo Chemical Transportation Co., 320 F.Supp. 631 (S.D.Tex. 1970).

■ Similarly, as assignee of Delta Concrete, the owner of the landing, the plaintiff has standing to sue. Moran Towing & Transportation Co. v. Conners-Standard Marine Corp., 226 F.Supp. 1013 (S.D.N.Y.), 316 F.2d 811 (2nd Cir. 1963); Ozanic v. United States, 188 F.2d 228 (2nd Cir. 1951); Salaky v. Atlas Tank Processing Corp., 120 F.Supp. 225 (E.D.N.Y.1953). Dravo concedes that Delta did have a good claim in admiralty against the defendant before it settled with Ohio Barge but its argument that jurisdiction was lost because the non-maritime contract may be a defense is not convincing. For jurisdictional purposes, we conclude that the assignment retains the maritime nature of the underlying cause of action and gives standing to the plaintiff's claim in admiralty.

■■ The admiralty eligibility of the count on implied warranty, however, presents some uncertainty. The court in the *Alamo Chemical Transportation Company* case, *supra*, pointed out that, at least in the Delaware district in this circuit, implied warranty had been treated more as a contractual than a tort claim and hence did not satisfy the requirements of admiralty when a nonmaritime contract was involved. See Noel v. United Aircraft Corp., 204 F.Supp. 929 (D. Delaware 1962) and Jennings v. Goodyear Aircraft Corp., 227 F.Supp. 246 (D.Delaware 1964). But the progress of the law in this area is typified by the Pennsylvania implied warranty cases which became increasingly liberal until 1966 when the Restatement theory of strict liability was adopted in Webb v.

Zern, 422 Pa. 424, 220 A.2d 853. The evolution of implied warranty as it grew into strict liability showed a shift from a rather rigid contractual approach to that of the more elastic tort viewpoint. This is the modern concept which permits implied warranty to fly the colors of tort, rather than contract, and sail into the admiralty harbor. Montgomery v. Goodyear Tire & Rubber Co., 231 F. Supp. 447 (S.D.N.Y.1964).

In a somewhat similar vein, the sixth count claims indemnification against the defendant on the grounds that although the plaintiff was legally liable to Delta Concrete, the primary responsibility for culpable conduct rested upon the defendant.

■ The concept of indemnity is recognized in admiralty and a thorough discussion of the doctrine and its application appears in the case of Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Company, et al., 410 F.2d 178 (5th Cir. 1969). Little would be served by reviewing that case in detail and it is enough to quote this brief excerpt:

"This accident occurred in navigable waters; therefore, the federal maritime law is the applicable law. [citations]. As we have already indicated, maritime law provides for tort indemnity where there is no negligence or only passive negligence attributed to the indemnitee." (P. 186)

The seventh count which is alleged to be in terms of unjust enrichment in substance is little more than a rephrasing of the Count 4 indemnification. See Chandler, Quasi Contractual Relief in Admiralty, 27 Mich.L.Rev. 23 (1928), cf. Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1956). Similarly, the eighth count alleging unseaworthiness particularly as to the defective R–2 filter and the improper design of the clutch control system is in most aspects a duplication of the earlier claims.[3]

■ The third count dealing in express warranty and the fifth count dealing with the indemnity as provided in the contract of construction, however, fall in completely different categories. These are founded directly upon provisions in the nonmaritime contract, a copy of which is attached to the Complaint as an exhibit. Indeed the form of the Complaint and its explicit references to the contract has caused difficulty by obscuring the grounds for admiralty jurisdiction on the other counts. There is no doubt that these particular counts, the third and fifth, standing alone, do not fall within admiralty jurisdiction.

Analysis of the Complaint therefore establishes that certain of the counts are cognizable in admiralty and others fail to qualify. Kaufman, et al. v. John Block & Co., 60 F.Supp. 992, 993 (S.D. N.Y.1945) holds that there cannot be coexistence in such a situation: "nor can nonadmiralty causes of action be joined to admiralty ones", citing Westfall Larson & Co. v. Allman-Hubble Tug Boat Co., 73 F.2d 200 (9th Cir. 1934). On the other hand, there is some qualifying language in Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 690, 70 S.Ct. 861, 865, 94 L.Ed. 1206 (1950) where the opinion reads:

"Unquestionably a court of admiralty will not enforce an independent equitable claim merely because it pertains to maritime property. [citation] * * The issue of fraud arises in connection with the attachment as a means of effectuating a claim incontestably in admiralty. To deny an admiralty court jurisdiction over this subsidiary or derivative issue in a litigation clearly maritime would require an absolute rule that admiralty is rigorously excluded from all contact with nonmaritime transactions and from all equitable relief, even though such nonmaritime transactions come into play, and such equitable relief is sought, in the course of admiralty's exercise of its

3. We do not pass upon the question of whether the plaintiff is entitled to invoke unseaworthiness in a case of this nature.

jurisdiction over a matter exclusively maritime. It would be strange indeed thus to hobble a legal system that has been so responsive to the practicalities of maritime commerce and so inventive in adapting its jurisdiction to the needs of that commerce. * * * To recognize these subsidiary powers of admiralty to deal justly with the claims that are within its jurisdiction is not to enlarge the admiralty jurisdiction but to avoid its mutilating restriction."

In American Stevedores v. Porello, 330 U.S. 446, 456, 67 S.Ct. 847, 853, 91 L.Ed. 1011 (1947), the Court said:

"And although admiralty jurisdiction over contracts partly maritime and partly nonmaritime in nature is doubtful, the cases raising such doubts are concerned only with contracts for the performance of partly nonmaritime activities. [citations]. To sever a contract provision for indemnity for damages arising out of the performance of wholly maritime activities would only needlessly multiply litigation."

It is the absence of diversity of citizenship between the parties which raises the very practical problems involved here. Consolidation of a civil action and an admiralty one for trial is an acceptable method of resolving all of the issues in one proceeding, even where it becomes necessary to have a jury pass on all phases of the cases. Blake v. Farrell Lines, Inc., 417 F.2d 264 (3rd Cir. 1969), affirming Close v. Calmar Steamship Corp., 44 F.R.D. 398 (E.D.Pa.1968).

We cannot order that the non-admiralty counts be filed in a civil action because diversity is lacking. The situation therefore is not unlike that faced by the Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) where it was held that pendent jurisdiction could be exercised in circumstances where diversity was lacking as to a state cause of action but where it and the federal claim were derived from a common nucleus

of operative facts. In explaining the principle, Mr. Justice Brennan said:

"This limited approach is unnecessarily grudging. Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,'

"U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." (P. 725, 86 S.Ct. p. 1138)

* * * * * *

"Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." (P. 726, 86 S.Ct. p. 1139)

See also Beverly Hills National Bank & Trust Co. v. Compania De Navegacione Almirante S.A., Panama, 437 F.2d 301 (9th Cir. 1971), and in this Circuit, see Knuth v. Erie-Crawford Dairy Co-Op. Ass'n, 395 F.2d 420 (3rd Cir. 1968).

In the American Law Institute, Study of Division of Jurisdiction between State and Federal Courts (1969), we read:

"Moreover, since the unification of admiralty and civil procedure, the doctrines of ancillary and pendent juris-

diction will permit joinder or impleader in any case in which the transaction or occurrence involved gives rise to both maritime and nonmaritime claims." (P. 228)

 By utilizing pendent jurisdiction admiralty can determine a claim for damages arising out of a collision on navigable waters occurring during the course of maritime commerce, albeit that the plaintiff has chosen to employ theories under many labels, some of them nonmaritime. Such a result is neither startling nor violative of good admiralty practice. Indeed sound judicial administration precludes any other result.

We conclude, therefore, that since the counts in admiralty are substantial, those of a nonmaritime nature should also be taken in tow and adjudicated at the same time.

Defendant's Motion to Dismiss will be denied.