**In the Matter of the Complaint of AMERICAN EXPORT LINES, INC., formerly known as American Export Isbrandtsen Lines, Inc., as owner of the S/S C.V. Sea Witch, seeking exoneration from or limitation of liability.**

No. 73 Civ. 2507 (CHT).

United States District Court,
S.D. New York.

July 21, 1983.

Haight, Gardner, Poor & Havens, New York City, for Farrell Lines, Inc., successor by merger to American Export Lines, Inc.; Chester D. Hooper, Cary Wiener, M.E. Deorchis, Manuel R. Llorca, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for Bath Iron Works Corp.; Kenneth Volk, Armen Vartian, New York City, of counsel.

Townley & Updike, New York City, for Sperry Rand Corp.; Richard B. Kelsky, New York City, of counsel.

Vincent, Berg, Russo, Marcigliano & Zawacki, New York City, for Bond Hydraulic Equipment Service, Inc.; Harry A. Gavalas, Dennis Cammarano, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for S/S Esso Brussels; Paul F. McGuire, New York City, of counsel.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., John S. Martin, Jr., U.S. Atty., S.D.N.Y., Dept. of Justice, Torts Branch, Civ.Div., New York City, for the Government; Janis G. Schulmeisters, James J. D'Alessandro, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The government moves for summary judgment dismissing the third-party complaint asserted against it by American Export Lines, Inc. ("AEL") and the cross-claims asserted against it by Bath Iron Works Corporation ("Bath") and Sperry Rand Corporation ("Sperry"). For the reasons discussed below, the government's motion is denied.

*Background*

On June 2, 1973 the S/S C.V. Sea Witch collided with the S/S Esso Brussels in the New York harbor. Shortly thereafter, AEL, owner of the Sea Witch, filed a petition for limitation of liability pursuant to 46 U.S.C. § 183. Claims were filed against AEL by the Esso Brussels' interests, by injured and dead seamen aboard both vessels, and by owners of cargo aboard the Sea Witch, including the United States.

One of the alleged causes of the collision was the failure of the Sea Witch's steering system. Accordingly, in December 1973 AEL filed third-party complaints against Bath, who built the Sea Witch; Sperry, who manufactured some of the Sea Witch's steering gear components; and Bond Hydraulic Equipment Service, Inc. ("Bond") who modified the Sea Witch's steering gear.

In early 1977, AEL sought leave to file a third-party complaint against the United States. The complaint alleged that if AEL were found liable by reason of its negligence or the Sea Witch's unseaworthiness, then the government—upon whose expertise and approval AEL relied in its decision not to provide a dual steering system for the Sea Witch—is bound to indemnify AEL. The Court permitted AEL to file its third-party complaint, and to advance therein both contractual and tort bases for its claim over. Shortly thereafter, the Court permitted Bath and Sperry to file similar cross-claims against the government.[1]

Since that time, the parties to this case have engaged in extensive settlement negotiations. AEL has, in fact, settled a number of the claims against it. The government, however, has steadfastly maintained that it has no liability to AEL or any of the

---

1. Although this brief summary hardly does justice to the complexity of this case, an exhaustive list of the claims outstanding is unnecessary to a discussion of the motion before the Court. Suffice it to say that, in addition to the claims already alluded to, numerous claims and cross claims have been asserted by and between the parties to this action.

other parties under the circumstances of this case. The government now moves to dismiss the claims for indemnity against it.

*Arguments*

The government advances a number of arguments in support of its motion for summary judgment. The Court will consider here only those arguments which concern this Court's jurisdiction to entertain the claims that have been made against the government.[2] First, the government argues that the tort indemnity claims are essentially claims for contribution from a joint tortfeasor that accrued at the time of the collision, and that these claims are therefore barred by the two year statute of limitations for claims against the United States.[3] Second, the government argues

2. In its papers, the government advanced four additional arguments in support of dismissal of the claims against it. The government argued that the inspection and approval activities complained of did not give rise to a cause of action; that AEL's claims would be barred by the discretionary function and misrepresentation exceptions of the Federal Tort Claims Act and that those exceptions should be implied under the SIAA to bar AEL's claims; that the "good samaritan" doctrine precludes the claims against it; and that AEL's modification of the steering gear mechanism constituted an intervening cause of the accident that relieved it from any liability to AEL.

However, those arguments were premised on certain basic facts which, according to the government, were not in dispute. However, subsequent to the government's filing of its motion the Court tried to get the parties to stipulate to those facts on which they could agree. Virtually the only facts on which the parties could reach agreement were the date of the collision and the dates on which the various claims were filed in this Court. Thus the Court has concluded—and the government conceded, at oral argument—that questions of material fact preclude summary judgment on these grounds.

The jurisdictional arguments, on the other hand, present questions of law based on the pleadings and may be considered on this motion. Under these circumstances, the government's motion is more akin to a motion for judgment on the pleadings. *See* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.02[3] at 56–28 to –30 (2d ed. 1982). Accordingly, in determining whether the government is entitled to summary judgment as a matter of law on the basis of the pleadings, the Court will assume AEL's factual allegations to be true. *George C. Frey Ready-Mixed Concrete, Inc., v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977).

3. The government in its brief has distinguished between claims for contract indemnity and claims for tort indemnity, apparently construing the alleged improper plan approval (and related claims) as the former, and the negligent inspection claims as the latter. The negligent inspection claims—which apparently involve no breach of a contractual duty—are clearly tort-based. The nature of claims that the government violated its contractual duties is not so clear, since courts are often vague as to whether indemnity is tort or contract-based, when there is a contract in the picture. *See, e.g., DeGioia v. United States Lines Co.,* 304 F.2d 421, 425 (2d Cir.1962) ("It is misleading to consider this [action by shipowner for indemnity from stevedore] literally only an action *ex contractu.*"); *Lawlor v. Socony-Vacuum Oil Co.,* 275 F.2d 599, 601–02 (2d Cir.1960). This may be due, in part, to the difficulty in analyzing an essentially equitable concept under strict contract or tort principles; moreover, such distinctions are frequently unnecessary.

However, the closest analogy to AEL's "contractual" claims are claims for indemnity based on breach of an implied warranty of workmanlike service, generally characterized as contractual. *See, e.g., Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 133–34, 76 S.Ct. 232, 237–38, 100 L.Ed. 133 (1956); *Araujo v. Wood's Hole, Martha's Vineyard, Nantucket S.S. Auth.,* 693 F.2d 1, 2–3 (1st Cir.1982); *Doca v. Marina Mercante Nicaraguense, S.A.,* 474 F.Supp. 751, 756 (S.D.N.Y.1979), *aff'd in part, vacated in part,* 634 F.2d 30 (2d Cir.1980), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981). Therefore, for purposes of this motion, claims that the government breached its contractual duties have been analyzed strictly as contract claims. However, the acts that constitute breach of a contractual duty may also give rise to tort-based claims. *See DeGioia v. United States Lines Co., supra,* 304 F.2d at 425 ("The obligations which arise from warranty are not limited to the confines of an action on the contract."); *Doca v. Marina Mercante Nicaraguense, S.A., supra,* 474 F.Supp. at 756–57. *See also Ohio Barge Line, Inc. v. Dravo Corp.,* 326 F.Supp. 863, 865–66 (W.D.Pa. 1971). Thus, the Court does not dismiss the possibility that claims for improper plan approval may have a tort basis. If they are considered tort claims, they are clearly unaffected by the limits on this Court's ability to entertain contract claims against the government. See discussion *infra* at 960–62. Nor does the contract requirement of *United New York Sandy Hook Pilots' Assn. v. United States,* 355 F.2d 189 (2d Cir.1965), necessarily bar them. See discussion *infra* at 963–64. However, it is unnecessary to resolve the issue at this stage,

that the contractual indemnity claims can be brought only in the Court of Claims.

AEL, in response, argues first that its claims are for indemnity rather than simply for contribution from a joint tortfeasor; that the indemnity claims accrued only when AEL settled the underlying cargo and personal injury claims; and that there is, therefore, no statute of limitations bar.[4] Second, AEL argues that the government has forfeited reliance on its time bar defense by asserting its cargo claims in this action.

*Discussion*

■ The United States as sovereign " 'is immune from suit save as it consents to be sued.' " *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Thus, "Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States under admiralty law or otherwise." *Roberts v. United States,* 498 F.2d 520, 525 (9th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). The Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 741–52, constitutes a waiver of sovereign immunity by the United States for certain maritime actions against the federal government. *Blanco v. United States,* 464 F.Supp. 927, 930 (S.D.N.Y.1979). The SIAA provides that:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States. . . .

46 U.S.C. § 742. The statute further provides that such actions shall be brought in the district courts. *Id.*

AEL argues that pursuant to the SIAA this Court has jurisdiction over its claims for indemnity. The Court will consider first the jurisdictional basis for any claim AEL may have for contractual indemnity.

■ The contract on which AEL bases its indemnity claim is the contract for the construction and the payment of a construction differential subsidy entered into by AEL, Bath and the Maritime Administration ("MARAD"), on behalf of the government. The contract contains no express indemnity provision. Nevertheless, AEL argues that it has an implied right to indemnity. It compares itself to a vessel owner held vicariously liable to a party injured through a contractor's negligence, citing *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and other cases which hold that a vessel has an implied contractual right to indemnity from a contractor who breached his duty to provide workmanlike service and so caused an accident for which the vessel owner was vicariously liable. Apparently, AEL relies on the provisions of the contract in which MARAD represented that the plans for the Sea Witch had the approval of MARAD and the Navy. AEL contends that the plans for the steering system were approved despite the fact that they were not in accordance with the applicable regulations, and that if the government had insisted on the dual steering system required by the regulations, the accident would not have occurred. The SIAA provides a waiver of sovereign immunity only "if a proceeding in admiralty could be maintained" were a private person involved. 46 U.S.C. § 742. It is "firmly established, albeit arguably inconsistent and illogical" that "agreements for the construction of vessels are not maritime contracts and, hence, not within the purview of admiralty jurisdiction." *Ohio Barge Line, Inc. v. Dravo Corp.,* 326 F.Supp. 863, 864 (W.D.Pa.

since the claims against the government are not being dismissed.

**4.** AEL filed a brief in response to the government's motion. Counsel for Bath, Sperry and Esso Brussels did not file briefs, but informed the Court that their position was, essentially, the same as AEL's. Thus, when the Court refers to "AEL's" arguments, it should be understood that the other parties to this motion join in those arguments.

1971) (footnotes omitted). *See Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *Thames Towboat Co. v. The "Francis McDonald",* 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920); *Walter v. Marine Office Of America,* 537 F.2d 89, 94 (5th Cir.1976). *See generally* 1 E. Jhirad & A. Sann, Benedict on Admiralty § 188 (7th ed. 1981). The contract here involved is one for the construction of, and payment of a construction subsidy for, a vessel. The conclusion that the contract is not a maritime contract is inescapable. The contract could not, therefore, be the basis of an admiralty proceeding against a private person. Accordingly, this Court has no jurisdiction pursuant to the SIAA to entertain a contract claim based on the subsidy contract against the United States.[5]

No other statute provides the requisite waiver of sovereign immunity necessary to bring this contract action against the United States in a federal district court. Only contract actions against the United States seeking recovery of $10,000 or less may be brought in a district court. 28 U.S.C. § 1346(a)(2). Contract actions against the United States seeking $10,000 or more must be brought in the Court of Claims. *Id.* § 1491.

However, counterclaims against the United States in the nature of recoupment do not require a statutory waiver of sovereign immunity. A recoupment is "the right of a defendant, 'to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation ... or because he has violated some duty which the law imposes upon him....'" *United States v. Wilson,* 523 F.Supp. 874, 900 (N.D.Iowa 1981) (quoting 20 Am.Jur.2d,

Counterclaim, Recoupment and Setoff, § 1 at 228 (1965)). A counterclaim for recoupment must arise from the same transaction or occurrence as the plaintiff's claim. *Id.;* 3 J. Moore, Moore's Federal Practice ¶ 13.02 at 13–13 n. 1 (2d ed. 1983). The United States, by bringing suit,

> waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim, but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims.

*Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967) (footnote omitted). *See United States v. Bedford Associates,* 618 F.2d 904, 917 (2d Cir.1980), *appeal after remand,* 657 F.2d 1300 (2d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982); *United States v. Frank,* 207 F.Supp. 216, 221 (S.D.N.Y.1962).

In the instant case, AEL's claim—like that of the government—arises from the collision of the Sea Witch and the Esso Brussels. The government claims damages for cargo lost in the collision; AEL claims that the government was at fault in causing the collision. Both parties seek the same kind of relief: money damages. Thus, although this Court has no power to award affirmative relief on AEL's contractual claim against the government, AEL is entitled to assert its claim to diminish or defeat recovery by the government on its claim.[6]

---

5. AEL also contends that the Court may exercise ancillary jurisdiction over its non-admiralty claims against the government. An admiralty court may exercise jurisdiction over non-maritime claims between non-diverse parties that derive from the same facts as their admiralty claims. *Ohio Barge Line, Inc. v. Dravo Corp., supra,* 326 F.Supp. at 867–68. However, jurisdiction over claims against the United States requires a waiver of sovereign immunity.

6. AEL's claim against the government asserts that if AEL is found liable to the claimants, the government is bound to indemnify it, in whole or in part, for any losses incurred as a result of that liability. In view of the many allegations of fault against the various parties in this action, it cannot be said that AEL's claim necessarily exceeds the amount of the government's claim. AEL's claim may stand, as a recoupment counterclaim to the extent of any amount awarded to the government. *See United States v. Wessel, Duval & Co.,* 115 F.Supp. 678, 686–

*Cf. United States v. Wessel, Duval & Co.,* 115 F.Supp. 678, 686–87 (S.D.N.Y.1953), *adhered to,* 123 F.Supp. 318 (S.D.N.Y.1954). The foregoing analysis applies as well to the claims of Sperry and Bath, since the government asserted claims against both parties shortly after this action was commenced.[7]

Accordingly, the claims for contractual indemnity against the government will not be dismissed for lack of jurisdiction.

The government also moves to dismiss, on jurisdictional grounds, the tort indemnity claims asserted against it. The government argues that the SIAA and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, have two year statutes of limitations, after which the right to sue the United States is entirely extinguished; that the claims for tort indemnity accrued at the time of the collision; and that this Court therefore has no jurisdiction to entertain those tort indemnity claims, which were not asserted until more than three years after the collision.

■ At the outset, the Court finds that the tort indemnity claims against the United States are maritime in nature and therefore properly brought pursuant to the SIAA, rather than the FTCA. As noted earlier, the SIAA provides a waiver of sovereign immunity in certain cases involving the United States in which, if a private person were involved, a proceeding in admiralty could be maintained. 46 U.S.C. § 742. "Admiralty jurisdiction in tort exists when the wrong (1) took place on navigable waters ('situs') and (2) 'bear[s] a significant relationship to traditional maritime activity' ('status')." *Keene Corp. v. United States,* 700 F.2d 836, 843 (2d Cir.1983) (citing *Executive Jet Aviation, Inc. v. City of Cleveland,*

409 U.S. 249, 254–61, 93 S.Ct. 493, 497–501, 34 L.Ed.2d 454 (1972) and *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982)). The situs of the collision was the New York harbor. The question then, is whether the government's alleged tortious acts and omissions—which AEL claims caused the collision—have a sufficient relationship to traditional maritime activity. As indicated earlier, shipbuilding activity is not itself maritime in nature. However, it would be absurd to conclude that vessel plan approval and inspection activities, undertaken by the government to ensure safety and security in navigation and commerce, are not closely related to traditional maritime· activities. Therefore, the claims against the government for tort indemnity, if timely, are properly brought under the SIAA.

Suits against the United States under the SIAA must be brought "within two years after the cause of action arises." 46 U.S.C. § 745. It is undisputed that the parties did not seek to amend their pleadings to assert indemnity claims against the United States until more than three years after the collision. Therefore, the timeliness of the indemnity claims against the government and, consequently, the jurisdiction of this Court to entertain those claims pursuant to the SIAA depends on when the indemnity cause of action arose.

It is generally held that a cause of action for indemnity based on tort is separate and distinct from a cause of action for the underlying tort; the indemnity cause of action accrues not when the tort is committed, but when the underlying claim, a judgment on that claim, or a settlement of that claim is paid or discharged. *See, e.g., Mack Trucks,*

---

87 (S.D.N.Y.1953), *adhered to,* 123 F.Supp. 318 (S.D.N.Y.1954). AEL's failure to designate its claim as one for recoupment is not fatal. *See United States v. Frank, supra,* 207 F.Supp. at 222–23.

**7.** Sperry, although not a party to the prime contract, was a subcontractor. The government claims that Sperry's indemnity claim should be dismissed on that basis. However, *DeGioia v. United States Lines Co., supra,*

states that responsibility for breach of an implied contractual warranty "may extend beyond those in direct contractual relationship." 304 F.2d at 425 (citations omitted). One can debate whether violation of a contractual duty by the government gives rise to a tort or contract-based cause of action as regards Sperry. See *supra* note 3. But in any case, Sperry's claims will not be dismissed at this stage simply because of its subcontractor status.

*Inc. v. Bendix-Westinghouse Automotive Air Brake Co.,* 372 F.2d 18, 20 (3d Cir.1966), *cert. denied,* 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); *Prudential Lines, Inc. v. General Tire Int'l Co.,* 440 F.Supp. 556, 558 & n. 3 (S.D.N.Y.1977), *adhered to,* 448 F.Supp. 202 (S.D.N.Y.1978) (collecting cases); *Department of Transp. v. Superior Court of Los Angeles County,* 26 Cal.3d 744, 608 P.2d 673, 163 Cal.Rptr. 585 (1980); *McDermott v. City of New York,* 50 N.Y.2d 211, 406 N.E.2d 460, 428 N.Y.S.2d 643 (1980). *See generally* Annot., 57 A.L.R.3d 867, 881–900 (1974). This is the prevailing rule in suits in admiralty. *See, e.g., Hercules, Inc. v. Stevens Shipping Co., Inc.,* 698 F.2d 726 (5th Cir.1983) (Former 5th en banc); *Prudential Lines, Inc. v. General Tire Int'l Co., supra; Francosteel Corp. v. S.S. Tien Cheung,* 375 F.Supp. 794 (S.D.N.Y. 1973). This rule has been applied in actions against the United States pursuant to the FTCA to allow parties to maintain actions against the United States that would otherwise be barred by the FTCA's two year limitations period. *See, e.g., United States Lines, Inc., v. United States,* 470 F.2d 487 (5th Cir.1972); *Chicago, Rock Island & Pacific Ry. Co. v. United States,* 220 F.2d 939 (7th Cir.1955); *cf. Keleket X-Ray Corp. v. United States,* 275 F.2d 167 (D.C.Cir.1960). This rule has also been applied, by some courts, in admiralty actions against the United States. *See, e.g., Thornton v. Town of Hull,* 515 F.Supp. 715 (D.Mass.1981); *Central Soya Co. v. Economy Boat Store,* 411 F.Supp. 214 (E.D.Mo.1976).

The government nevertheless argues that the tort indemnity claims are barred because they were filed more than two years after the collision. The government cites a number of cases in support of its argu-

ment,[8] the most significant of which is *United New York Sandy Hook Pilots' Association v. United States,* 355 F.2d 189 (2d Cir.1965) (hereinafter *"Sandy Hook"*).

The United New York Sandy Hook Pilots' Association ("the Association") was sued in state court by a crewman on a Coast Guard cutter injured in a collision between the cutter and an Association boat. The Association filed suit against the United States pursuant to the Public Vessels Act ("the PVA"), 46 U.S.C. § 781 *et seq.,* claiming that the government's negligence was the sole cause of the accident and that the government should therefore be liable for any recovery by its employee. The PVA incorporates the SIAA's two year limitations period, *id.* § 782; the Association's suit was filed more than two years after the collision.

The district court dismissed the suit. 191 F.Supp. 893 (S.D.N.Y.1961) (Dawson, J.). The court concluded that the cause of action accrued on the day of the accident, and was therefore barred by the statute of limitations. *Id.* at 894. According to Judge Dawson, "[i]f . . . this action is one for indemnification, the statute would not begin to run until the liability becomes fixed, or as here, until the Supreme Court action is determined. *But the libel does not allege any cause of action for indemnification." Id.* (emphasis added). He observed that "[n]o contract exists calling for indemnification . . . . Rather the Government's liability, if it exists at all, *is that of a tort-feasor and not as an indemnitor." Id.* at 895 (emphasis added).

The Association subsequently settled the claim, and filed a second action in district

---

**8.** Two of the cases cited by the government deserve only brief mention. *United States v. Lidoriki Maritime Corp.,* 1978 A.M.C. 250 (E.D. Pa.1977), does not support its argument; in fact, it cuts the other way. In that case, the court dismissed on statute of limitations grounds a claim against the government for negligence, not one for tort indemnity. The court also dismissed a claim against the government for contribution as *not mature. Id.* at 252–53. *H–10 Water Taxi Co. v. United States,* 379 F.2d 963 (9th Cir.1967), is readily

distinguished. The court held that the claim against the government, filed more than two years after the injury, was barred. It reasoned, however, that an indemnity cause of action arises when the person seeking indemnity becomes legally liable to pay the obligation, and that the obligation to provide maintenance and cure—for which H–10 sought indemnity from the government—stems from the employment relationship rather than from the tort and thus begins at the time of the injury. *Id.* at 964.

court for the entire amount of the settlement. Judge McMahon, in an unreported decision, held that Judge Dawson's decision was controlling. 355 F.2d at 190. He observed, as had Judge Dawson, that there were no allegations of an indemnity agreement, express or implied, and concluded that the complaint "asserted only a claim *for contribution* which was time-barred." *Id.* (emphasis added).

The Association appealed, but the court of appeals affirmed the lower court's ruling. 355 F.2d 189. The court, relying on Judge Dawson's reasoning, concluded that the facts pleaded by the Association "gave rise only to a claim against a tortfeasor" rather than to a claim "for indemnity based on contract." *Id.* at 190–91.

According to the government, the court in *Sandy Hook* held that a claim for tort indemnity arises at the time of the accident, rather than at the time settlement or judgment is paid. This interpretation warrants careful scrutiny, since it is clearly at odds with the weight of the law concerning the time of accrual of a tort indemnity claim.[9]

Having carefully considered the *Sandy Hook* opinions, as well as *Hallmark Ins. Co. v. Canadian Pacific R.R.,* 1978 A.M.C. 409 (W.D.Mich.1977) and *Twenty Transfer Corp. v. Tracy Towing Line, Inc.,* 1969 A.M.C. 1207 (S.D.N.Y.1969)—both of which rely on *Sandy Hook*—the Court must conclude that the government interprets *Sandy Hook* incorrectly.

■ *Sandy Hook* involved a distinction, for purposes of determining when a cause of action arises, between claims for contribution and claims for indemnity. It specifically discussed claims for *contractual* indemnity because no claim for tort indemnity was involved in *Sandy Hook*. On the facts, none was possible. A party may sue in admiralty for tort indemnity if he is vicariously liable for the culpable conduct of another, but he may not recover on this theory if he himself has been guilty of negligence.[10] *Araujo v. Wood's Hole, Martha's Vineyard, Nantucket S.S. Auth.,* 693 F.2d 1, 3 (1st Cir.1982); *United States Lines, Inc. v. Newport News Shipbuilding & Dry Dock Co.,* 688 F.2d 236, 240–41 (4th

---

**9.** Moreover, if *Sandy Hook* is given the interpretation advanced by the government, it also runs counter to *Hidick v. Orion Shipping & Trading Co.,* 157 F.Supp. 477 (S.D.N.Y.1957) *unreported decision on merits aff'd,* 278 F.2d 114 (2d Cir.), *cert. denied,* 364 U.S. 830, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960), on which Judge Dawson relied. 191 F.Supp. at 895. Hidick was a seaman injured on a vessel owned by Pacific Cargo Carriers, Inc. ("Pacific"). Hidick sued Pacific; Pacific filed a third-party complaint for indemnification against the United States, the vessel charterer, alleging that the injuries were the result of the government's negligence. Pacific—like AEL—had a contract with the government which contained no express provision for indemnification. The court refused to dismiss Pacific's complaint, although it had not been filed within the SIAA's two year limitations period. The court discussed at length *Chicago, Rock Island & Pacific Ry. Co. v. United States,* 220 F.2d 939 (7th Cir.1955), in which the Seventh Circuit had held that the railroad's indemnity claim against the government, filed within two years of the railroad's settlement with its injured employee, was not barred by the FTCA's two year limitations period. The *Hidick* court quoted with approval the Seventh Circuit's reasoning:

"It is plain, of course, that no claim accrued to the plaintiff against the government prior

to the date when the former made payment to its employee. The government's contention on this point, if sustained, would mean that a suit under the Tort Claims Act could be barred before it came into existence. Such an application of the limitation provision would produce an incongruity which we think should not be made."

157 F.Supp. at 488 (quoting *Chicago, Rock Island & Pacific Ry. Co. v. United States, supra,* 220 F.2d at 942).

The *Hidick* court concluded: "It would be both inequitable and illogical to hold that Pacific's cause of action against the Government for indemnification accrued before Pacific's own loss had been fixed by judgment in favor of the injured seamen or settlement with them." 157 F.Supp. at 489.

**10.** AEL claims that it is entitled to indemnity from the government because it may be held vicariously liable, on the ground of unseaworthiness, for the government's negligence. The government has made a number of allegations of negligence on AEL's part which, if proved, would defeat AEL's claim for indemnity. However, these matters cannot be decided on a motion for summary judgment; for the purposes of this motion, the truth of AEL's claim that it was not negligent is assumed.

Cir.1982); *White v. Johns-Manville Corp.,* 662 F.2d 243, 249–50 (4th Cir.1981).

In *Sandy Hook,* the Association's action in federal court was based on a suit filed against it in state court. Significantly, the state court action was brought by a government employee who had been aboard the cutter, and not by an Association employee. There is nothing to suggest that the Association might have been vicariously liable for negligence on the part of the government, or that the state court suit and the subsequent settlement were premised on anything other than negligence on the part of the Association or its own employees. The Association's claims were for contribution, and thus barred by the statute of limitations, absent allegations of a contract of indemnity. The language of the *Sandy Hook* opinions indicates that the courts, not being faced with the situation, simply did not envision the possibility of vicarious liability—a necessary requisite to a claim for tort indemnity—in the absence of a contract governing the wrongs complained of. For instance, Judge Dawson, noting that the libel did not allege "any cause of action for indemnification," 191 F.Supp. at 894, distinguished between a claim against a *tortfeasor* and a claim against an *indemnitor.* Id. at 895 (emphasis added). As Judge McMahon observed, the libel in *Sandy Hook* alleged a claim for contribution. 355 F.2d at 190. Thus, when the court of appeals referred to "a claim against a tortfeasor" that was barred by the two year limitations period, 355 F.2d at 190–91, it was referring to a claim for contribution. AEL, in contrast, alleges a claim for indemnification premised on its vicarious liability. And on actions "for indemnification" the statute of limitations does not begin to run "until the liability becomes fixed." 191 F.Supp. at 894.

*Twenty Transfer Corp. v. Tracy Towing Line, Inc., supra,* and *Hallmark Ins. Co. v. Canadian Pacific R.R., supra,* both cited by the government in support of its argument, are consistent with this conclusion. *Twenty Transfer* involved a tug that went aground while towing plaintiff's barge. Three years after the accident, defendant Tracy, owner of the tug, filed a third-party complaint against the United States alleging negligence in the maintenance of buoys. 1969 A.M.C. at 1207–08. The court dismissed the third-party complaint, declaring that "there seems to be no possibility that either could be vicariously responsible for the breach [of duty] of the other. Indemnity does not arise out of a joint tortfeasor relation and there is no contractual indemnity relationship between Tracy and the United States." *Id.* at 1208.

In *Hallmark,* plaintiff sued to recover for damages to a sailboat caught beneath a drawbridge operated by Central Pacific. Central Pacific sought to implead the United States, shortly after Hallmark's complaint was filed but more than two years after the accident. Central Pacific complained that the government was liable for failing to warn it of the presence of a boat in the Soo Canal. 1978 A.M.C. at 409.

The court stated in dicta that the two year limitation period applied "[i]f the United States is impleaded as a tortious indemnitor." *Id.* at 411–12. However, the court went on to hold that the facts in the third-party complaint did not make out a claim for indemnification, since "at no time is it alleged that the United States delegated a non-delegable duty or turned over control of property to [Central Pacific]. As such, [Central Pacific's] suit against the government is one seeking contribution rather than indemnification. The suit for contribution is barred by the two year limitation of [§ 745]." *Id.* at 412.

Thus, the *Hallmark* court, like the court in *Twenty Transfer,* plainly felt that it was necessary to preclude the possibility that the party seeking "indemnity" might be vicariously liable, before concluding that the two year limitations period applied. In fact, both cases involved claims for contribution. In the instant case, however—assuming AEL's allegations to be true—AEL could be held vicariously liable

for the government's negligence.[11] Therefore, the Court holds that the claims against the government for indemnity did not accrue at the time of the collision. They were timely filed.[12] Jurisdiction over the tort indemnity claims against the government is proper under the SIAA.[13]

Accordingly, the government's motion for summary judgment is denied.

So ordered.

**11.** The Court questions whether Bath and Sperry have any basis on which to allege vicarious liability, which, as discussed above, is a necessary requisite of a claim for tort indemnity. However, the issue was not argued on this motion, and the Court has previously ruled that there is "some 'relationship' between ... Bath, Sperry and the Government in this matter, one which could arguably raise a claim of indemnification." Memorandum dated September 16, 1977, at 6. Accordingly, their tort-based claims against the government will not be dismissed at this time. However, the Court cautions that recovery from the government is possible only if the party seeking indemnity can show, at trial, that it is only vicariously responsible for the government's negligence.

**12.** AEL may not, however, be indemnified for claims, if any, settled more than two years before it asserted its indemnity claims against the government.

**13.** Furthermore, there is an alternate basis on which to allow the tort claims. AEL argues that the government, by asserting a claim against it, has waived its statute of limitations defense. AEL is correct, to a point; the government has waived its statute of limitations defense, but only as to claims for recoupment. "Where the United States sues, the defendant, without relying on any other waiver of sovereign immunity, may recoup by counterclaim, to the extent of any amount awarded the United States, any damages which have arisen out of the same transaction or contract or subject of the action." *United States v. Wessel, Duval & Co., supra,* 115 F.Supp. at 687 (citations omitted).

*Wessel, Duval* was an admiralty action in which the United States, as time charterer of the S.S. Edward Rutledge, sued Wessel, Duval,

the vessel's bareboat charterer, for an alleged breach of contract resulting in the vessel's being stranded in the Bahamas. After the expiration of the limitations period, Wessel, Duval counterclaimed for unpaid charter hire, damages for failure to keep the vessel in good order, and the United States' share of a general average obligation that had resulted from an earlier stranding. 115 F.Supp. at 680. The court, concluding that Wessel, Duval's claims arose from the same "transaction or occurrence" as the government's claims, permitted them to stand as "a counterclaim by way of recoupment against any amount awarded to [the government], to the extent of the amount of that award only." *Id.* at 687. *Accord, United States v. Waterman S.S. Corp.,* 471 F.Supp. 87, 95–96 (D.D.C.1979). *Cf. United States v. Frank,* 207 F.Supp. 216 (S.D.N.Y.1962); 3 J. Moore, Moore's Federal Practice ¶ 13.29 at 13–181 (2d ed. 1983) ("In cases between private parties not involving the United States ... filing an action waives the statute of limitations on counterclaims as to defensive recoupment but does not waive it as to affirmative set-off ... there is no good reason why these evolving general principles should not also be applied to counterclaims against the United States. The better reasoned cases under the Federal Tort Claims Act have so held, but there are cases to the contrary." (Footnotes omitted)).

Because the tort indemnity claims arise from *the same transaction or occurrence as the* government's claim, they would be permitted to stand as claims for recoupment absent jurisdiction over the government pursuant to the SIAA. Although affirmative relief could not, under those circumstances, be awarded on those claims, relief could be granted to the extent of defeating or diminishing the government's claim.