**450**

these conditions cannot be met, the writ must issue.

**SEA–LAND SERVICE, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 87–2483.**

United States District Court,
D. New Jersey.

July 13, 1988.

John R. Bolton, Asst. Atty. Gen., Samuel A. Alito, Jr., U.S. Atty., D. N.J., Jerome L. Merin, Asst. U.S. Atty., U.S. Dept. of Justice, Newark, N.J., and J. Patrick Glynn, Director, Torts Branch, Civ. Div., Harold J. Engel, Deputy Director, J. Charles Kruse, Special Litigation Counsel, Steven M. Talson, Trial Attorney, U.S. Dept. of Justice, Washington, D.C., for defendant.

Crummy, Del Deo, Dolan, Griffinger & Vecchione, Michael D. Loprete, Newark, N.J., and Haight, Gardner, Poor & Havens, Stephen K. Carr, New York City, for plaintiff.

OPINION

WOLIN, District Judge.

In the instant action, this Court is faced with defendant's motion to dismiss plaintiff's suit on the theories that (1) plaintiff's claim for contribution is barred by the statute of limitations and (2) there is no legal duty to indemnify plaintiff. For the following reasons, defendant's motion is granted.

## I. BACKGROUND

This action arises from a wrongful death action brought in the New York State Supreme Court for New York County captioned *Anna Claire Swogger, as Executrix of the Estate of David Swogger v. Waterman Steamship Corp., et al.*, Index No. 13163/79 (the *"Swogger* action"). The *Swogger* action, commenced on April 13, 1979, was originally brought by David Swogger as a seaman's action for personal injury pursuant to the Jones Act, 46 U.S.C. App. § 688, and general maritime law.[1] The complaint alleged that while working as a marine engineer aboard thirteen vessels owned by five shipowner defendants (one of whom was Sea–Land Service, Inc.— the plaintiff herein), David Swogger was exposed to asbestos-containing products

---

1. On January 10, 1980, Swogger died, allegedly of malignant mesothelioma contracted as a result of his exposure to asbestos and asbestos-laden products aboard defendants' ships. There-after, his widow, Anna Claire Swogger, was subsequently named Executrix and the complaint was amended to add a cause of action for wrongful death.

which caused him to contract a lung disease. Swogger's period of employment aboard these named vessels spanned 29 years from 1949 through 1978.

Discovery in the *Swogger* action indicated that David Swogger's complaint did not, however, seek recovery for his initial years at sea between the period 1943–1949. During this period, Swogger sailed exclusively aboard vessels owned and/or operated for the United States pursuant to General Agency Agreements by four shipping companies.[2]

In February, 1984, Sea–Land (a defendant in the *Swogger* action) filed a third-party complaint in New York State naming 52 third-party defendants, including asbestos manufacturers, shipyards, distributors and additional shipping companies. Included within this group of third-party defendants were the four shipowner-employers who, although not named as primary defendants in the *Swogger* action, operated ships for the United States during 1943–1948 pursuant to the above-noted General Agency Agreements. Pursuant to contractual relations and/or the Suits in Admiralty Act, 46 U.S.C.App. § 741 *et seq.* ("SIAA"), these four defendants, because they operated as agents of the United States, tendered their defenses to the United States whereupon Sea–Land agreed to their voluntary dismissal from the *Swogger* action.[3]

On June 24, 1985, Sea–Land reached a settlement in the *Swogger* action. Thereafter, Sea–Land made payments pursuant to that settlement. Exactly two years later, on June 24, 1987, Sea–Land ("plaintiff") filed the instant suit against the United States ("defendant") pursuant to the provisions of the Public Vessels Act, 46 U.S.C.App. § 782, *et seq.*, and general admiralty law. In this action, Sea–Land seeks indemnity or contribution from the United States for the sums it paid in settlement of the *Swogger* action due to Swogger's alleged exposure to asbestos while employed aboard the vessels owned or operated by the United States.

Currently, the United States moves to dismiss the complaint, claiming that (i) the action is barred by the applicable statute of limitations and (ii) the relationship between Sea–Land and the United States is such that no valid claim for indemnity exists.

## II. DISCUSSION

### A. *Statute of Limitations—Contribution*

Section five of the Suits in Admiralty Act, 46 U.S.C.App. § 745, provides, in pertinent part, that suits against the United States "may be brought only within two years after the cause of action arises...." Defendant maintains, therefore, that plaintiff's action is now time-barred because the two-year statute of limitations began to run, at the latest, upon the date of David Swogger's death—January 10, 1980. Plaintiff, however, did not file the instant action for contribution and indemnity until June 24, 1987—more than seven-and-one-half years following Mr. Swogger's death. In response, plaintiff maintains that its cause of action did not accrue until June 24, 1985, the date of the settlement of the *Swogger* action. Thus, according to plaintiff its action was timely. Therefore, the issue before this Court with respect to the statute of limitations is the determination of precisely when plaintiff's cause of action

---

**2.** These companies were: Exxon Co. U.S.A. (Standard Oil of New Jersey), Marine Transport Lines, Inc., Moore–McCormack Lines and United States Lines Co.

**3.** Sea–Land claims that it agreed to this voluntary dismissal with the understanding that the United States would raise no objection to the timeliness of the suit it proposed to bring in federal court (*i.e.*, the instant action). Such a claim, however, is without merit in light of the fact that the United States apparently informed Sea–Land that it had neither the authority nor the inclination to waive its statute of limitations defense. Moreover, regardless of whether such an agreement existed, this Court finds that as a matter of law it would have been unenforceable. *See, e.g., Nan Sing Marine Co., Ltd. v. United States,* 811 F.2d 1495, 1497–98 (Fed.Cir. 1987) (noting that there exists a split of authority as to whether two-year statute of limitations may be tolled in light of the fact that it is a jurisdictional prerequisite "unlike most limitations legislation applicable to private parties[ ]") (citation omitted).

in its contribution/indemnification action accrued.

(1) *The Government's Position.* In support of its argument that plaintiff's cause of action accrued in 1980, defendant cites *United New York Sandy Hook Pilots' Association v. United States*, 355 F.2d 189 (2d Cir.1965) in which the Second Circuit stated:

> [T]he facts pleaded by [the party seeking contribution] gave rise only to a claim against a tortfeasor and that this became time-barred two years after the accident, *although the amount had not yet been established.* The settlement did nothing to change this.

*Id.* at 190–191 (emphasis added). *See also Complaint of American Export Lines, Inc.*, 568 F.Supp. 956, 964 (S.D.N.Y.1983) ("when the Court of Appeals [in *Sandy Hook* ] referred to 'a claim against a tortfeasor' that was barred by the two year limitations period ... it was referring to a claim for contribution[ ]").

(2) *Sea–Land's Position.* In contrast to defendant's position, plaintiff asserts that a cause of action for contribution does not accrue at the time of the underlying injury, but rather when the party seeking contribution makes payment on the underlying claim. For example, in *Central Rivers Towing v. City of Beardstown*, 750 F.2d 565 (7th Cir.1984), the Seventh Circuit held that a third-party contribution action against the United States brought pursuant to section 5 of the SIAA arose only upon the entry of judgment in the underlying action. The Seventh Circuit continued:

> The Suits in Admiralty Act provides that suits under it may be brought against the United States only within two years after the cause of action arises. 46 U.S.C. § 745. Noting that the plaintiff's cause of action against the United States would have arisen at the time of the accident, the government correctly states that a direct suit by the plaintiff would now be barred. But the government goes farther than this, arguing that as a

result of its lack of liability to the plaintiff, it cannot share joint liability with the [defendant], and therefore the [defendant] can have no claim of contribution against it. In support of this proposition, the government cites numerous cases in which one joint tortfeasor was immune from tort liability to the plaintiff and the court held that it could not be held liable in contribution to the other tortfeasor.

> \* \* \* \* \* \*

> We need not explore the government's list of arguably analogous precedent, since there are other and more persuasive cases involving statute of limitations defenses which are directly on point. The district court in this case disposed of the government's statute of limitations argument in rejecting its motion for summary judgment, holding that 'the third-party complaint and § 745 statute of limitations are governed by when a final judgment or payment is receive by a third party.' We find this to be a correct statement of the law.

*Id.* at 571–572. *See also Thornton v. Hull*, 515 F.Supp. 715, 716 (D.Mass.1981) (notwithstanding two-year limitation of SIAA, third-party action for indemnification or contribution does not accrue until either final judgment or payment by third-party plaintiff to original plaintiff) (citations omitted). *But see Brown v. United States*, 615 F.Supp. 391, 407 (D.Mass.1985) ("[t]o the extent [third-party plaintiff's] claim for indemnification is actually a claim for contribution, that claim is barred by the two year statute of limitations under the reasoning set out in the *Sandy Hook* case[ ]").

(3) *The Common Law/Admiralty Distinction.* The government does not contest Sea–Land's point that at common law "the fact that the statute of limitations has run against the original plaintiff's action does not bar a claim for contribution, since that cause of action does not arise until payment." Prosser & Keeton, *The Law of Torts*, § 150 at 340 (5th Ed.1984).[4] In-

---

**4.** This rule is based on the equitable principle that the inaction of the original plaintiff should not defeat a defendant/third-party plaintiff's right to contribution. *Keleket X–Ray Corp. v. United States*, 275 F.2d 167, 169 (D.C.Cir.1960).

stead, the government maintains that the character of the two-year limitation, inasmuch as it constitutes a substantive jurisdictional prerequisite as well as a temporal limitation, dictates the dismissal of plaintiff's action. In effect, the government asserts that there is a distinction, albeit arbitrary, between claims for contribution against a private party in general litigation and admiralty claims for contribution against the government.

This distinction, however, is not without support. In *Sandy Hook,* the Second Circuit noted that although a third-party plaintiff's contribution action was barred two years after the underlying incident, an action for contractual indemnity would have been timely inasmuch as it did not accrue until two years after liability had been fixed. 355 F.2d at 191. Subsequently, *Sandy Hook* was interpreted as follows:

> *Sandy Hook* involved a distinction, for purposes of determining when a cause of action arises, between claims for contribution and claims for indemnity. It specifically discussed claims for *contractual* indemnity because no claim for tort indemnity was involved in *Sandy Hook.* On the facts, none was possible. A party may sue in admiralty for tort indemnity if he is vicariously liable for the culpable conduct of another, but he may not recover on this theory if he himself has been guilty of negligence.

*American Export Lines, supra,* 568 F.Supp. at 964 (emphasis in original) (footnote omitted; citations omitted). In *American Export Lines,* a case involving the collision of two privately owned ships, one of the shipowners attempted to bring a third-party tort indemnification action against the United States. The *American Export Lines* court stated that under admiralty law there existed a substantive distinction between claims for contribution (premised entirely on the existence of joint tortfeasors) and those for indemnity (premised on the vicarious liability of the third-party defendant). 568 F.Supp. at 965 (citing *Twenty Transfer Corp. v. Tracy Towing Line, Inc.,* 1969 A.M.C. 1207 (S.D.N.Y. 1969); *Hallmark Ins. Co. v. Canadian Pacific R.R.,* 1978 A.M.C. 409 (W.D.Mich.

1977)). The Court concluded that even though the contribution claims as against the government were time-barred, the indemnification claims would not be dismissed because there existed the possibility that the government was vicariously liable. *American Export Lines,* 568 F.Supp. 965–966.

In turn, the *American Export Lines* case was interpreted as follows:

> Thus the *American Export Lines* court held that a tort indemnification action could be maintained where it was alleged that the government's negligence in designing a vessel's steering mechanism was the sole cause of a collision that occurred more than two years before the claim for indemnification was filed.

*Brown v. United States, supra,* 615 F.Supp. at 407. Accordingly, the *Brown* court concluded that:

> To the extent that [third-party plaintiff's] claim for indemnification is actually a claim for contribution, that claim is barred by the two year statute of limitations under the reasoning set out in the *Sandy Hook* cases.

615 F.Supp. at 407.

This Court acknowledges that the *Sandy Hook/American Export Lines/Brown* line of cases is not embraced by all courts. Specifically, this Court notes that *Thornton v. Hull, supra,* and *Central Rivers Towing v. City of Beardstown, supra,* stand for the proposition that third-party tort actions under 46 U.S.C.App. § 745 sounding either in contribution *or* indemnification do not accrue until such time as liability has been established in the underlying action. *Thornton,* 515 F.Supp. at 716, *Central Rivers Towing,* 750 F.2d at 572. The *Thornton/Central Rivers Towing* line of cases, however, nowhere acknowledges the existence of the *Sandy Hook* anomaly. Instead, both *Thornton* and *Central Rivers Towing* treat contribution and indemnification as a single theory under admiralty law. Inasmuch as both contribution and indemnity are concerned with the apportionment of liability they are similar. However, contribution arises from

the liability of "a joint tortfeasor whose fault concurred as a proximate cause of the plaintiff's injuries, or to exonerat[e] active fault intervened as a superseding cause of the injuries." *White v. Johns–Manville Corp.*, 662 F.2d 243, 250 (4th Cir.1981), whereas indemnification is "[d]esigned to shift the whole loss upon the more guilty [*i.e.*, "non-passive"] of the two tortfeasors." *Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority*, 693 F.2d 1, 3 (1st Cir.1982) (citation omitted). And tort indemnification is inappropriate where the "party seeking indemnification was itself guilty of acts or proximately causing the plaintiff's injury[.]" *Woods Hole*, 693 F.2d at 3 (citing *Wedlock v. Gulf Mississippi Marine Corp.*, 554 F.2d 240, 243 (5th Cir.1977)).[5]

In light of this above-noted distinction, the paucity of relevant law in this Circuit and the fact that the *Sandy Hook* and *Central Rivers Towing* lines of cases seem irreconcilable as to the accrual date of contribution actions, this Court chooses to follow the *Sandy Hook* approach.[6] Although seemingly contrary to the general notion of contribution, the law of admiralty appears to be distinct unto itself; and it is not now within the province of this Court to amend that which has withstood the test of time. Accordingly, this Court finds that, as a matter of law, plaintiff's contribution action is barred by the two-year statute of limitations of 46 U.S.C.App. § 745.[7]

### B. *Active/Passive Liability—Indemnity*

Suffice it to say that at oral argument counsel for plaintiff represented that it could not support its claim for indemnity. Instead, counsel admitted that plaintiff's

claim could be characterized strictly as that of contribution. Thus, for the reasons already noted *supra*, defendant's motion to dismiss must be granted in its entirety.

### III. CONCLUSION

For all of the above-noted reasons, defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction is GRANTED in its entirety.

An appropriate order will issue.

---

**5.** The substantive distinction between contribution and indemnity, which derives from the legal characterization of the two actions, directly implicates the accrual date for each. Under contribution, the defendant is characterized as a joint tortfeasor; moreover, he became a joint tortfeasor when the underlying action occurred and that is why the statute of limitations runs from the time the cause of action arose. Whereas under indemnity, the defendant is not a joint tortfeasor, but rather he only became an indemnitor at such time as liability was established for the underlying action. Accordingly, the statute of limitations runs from that time.

**6.** Moreover, the government maintains that *Central Rivers Towing* is distinguishable on the facts because there the government was well aware of an impending third-party defense from the date of the filing of the original suit.

**7.** With respect to Sea–Land's argument that this result wreaks unfairness upon it in its capacity to apportion liability as a third-party plaintiff, this Court notes that waivers of sovereign immunity are to be strictly construed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).