**NAN SING MARINE COMPANY, LTD., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 86–1453.**

United States Court of Appeals, Federal Circuit.

Feb. 17, 1987.

Lesli Yu, Kerns and Klimek, P.C., of Washington, D.C., argued for appellant. Christopher M. Kerns and Robert H. Rumizen, Kerns and Klimek, P.C., of Washington, D.C., were on the brief for appellant. Robert A. Klimek, Kerns and Klimek, of Washington, D.C., counsel of record for appellant.

Ronald Schechter, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director. Stephen J. Narkin, Agency for Intern. Development, of counsel.

Before DAVIS, Circuit Judge, BENNETT, Senior Circuit Judge, and SMITH, Circuit Judge.

DAVIS, Circuit Judge.

Nan Sing Marine Company, Ltd. (Nan Sing) appeals from a decision of the Armed Services Board of Contract Appeals (ASBCA or Board) dismissing appellant's breach of contract claim (before trial) because it had been extinguished by passage of the applicable statute of limitations before the effective date of the Contract Disputes Act of 1978. *Nan Sing Marine* *Company, Ltd.,* 86–2 BCA ¶ 19,006 (April 29, 1986). We agree and affirm.[1]

## I.

The Board found the following to be the pertinent facts (*see* 86–2 BCA at 95,988–89) and they are not now contested. In December 1974 (during the Vietnam hostilities), the United States Agency for International Development (USAID) entered into a charter party with appellant Nan Sing to carry rice in appellant's ship to Phnom Penh, Cambodia, from Saigon, Vietnam. In January 1975 the ship (the Wah On) twice voyaged up the Mekong River to Phnom Penh but on its second trip[2] was attacked from the banks by enemy rocket and machine gun fire; the vessel was damaged and immobilized, and the crew had to abandon ship. As a result, the owner, Nan Sing, lost the vessel. Nan Sing's president traveled in April 1975 to Saigon to discuss the claim for loss of the vessel; while he was there Saigon fell to the Communist forces (on April 30, 1975) and he was detained until May 18, 1977. Shortly after Saigon fell, a formal claim for loss of the vessel was filed with USAID in Washington; the claim was denied by that agency. In May 1977 the claim was resubmitted to USAID after the release of Nan Sing's president from detention in Vietnam; it was again denied. Appellant then unsuccessfully sought assistance from the United States Ambassador in Taiwan and obtained legal counsel in this country. In April 1981 Nan Sing submitted to USAID a Petition for Extraordinary Contractual Relief under Executive Order No. 11223, asking $5,519,038; appellant was granted only some $11,500 on its claim.[3] In March 1982 Nan Sing asked the ASBCA to consider its claim. The Board first dismissed the claim

---

1. At an earlier stage, a motions panel of this court denied the Government's motion to dismiss the appeal for lack of jurisdiction in this court. Though appellee raises that point again, we see no occasion to review the ruling of the motions panel.

2. Nan Sing's complaint before the Board alleges that appellant did not want to go back up the Mekong River but was tricked and forced into doing so against its will by USAID officials. The Government's answer denies this allegation.

3. The ASBCA expressly found that none of these pre-1982 claims was considered or denied by a contracting officer but by an official with another status.

on the ground that it had not been properly certified. Nan Sing then submitted a certified claim to the contracting officer. When no contracting officer's decision was issued, appellant treated its claim as having been denied and again filed an appeal with the ASBCA. The Government moved to dismiss. It is the Board's grant of that motion that is now before us.

The ASBCA held that Nan Sing's claim was a breach of contract claim and a maritime claim which (a) accrued in January 1975, (b) could and should have been brought under the Suits in Admiralty Act but was not, (c) was subject to that Act's two-year statute of limitations which was not tolled, and (d) was wholly extinguished in January 1977, well before the Contract Disputes Act became effective on March 1, 1979. The Board also ruled that the claim was not revived or restored by the Contract Disputes Act.[4]

## II.

Each element of the portion of the Board's decision now on appeal was correct.

■ 1. The Board rightly held that Nan Sing's claim does not arise "under the contract" but was for breach of the charter party. 86–2 BCA at 95,989. (That seems to have been the common agreement until this appeal.) That breach of contract claim plainly accrued when the vessel was captured and lost to Nan Sing in January 1975. *See McMahon v. United States*, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951). At that time (pre-Contract Disputes Act) there was no requirement that administrative remedies for such breaches be exhausted before suit could be brought in court. Those who claimed that their Government contracts had been breached could sue immediately in the proper court.

■ 2. Though appellant disputes the point, we have no doubt that the claim was a maritime one which could have been (and had to be) brought under the Suits in Admiralty Act, 46 U.S.C. § 741, *et seq.*, rather than the Tucker Act. The former statute applies to cases involving merchant-type vessels owned, possessed, or operated by the United States (46 U.S.C. §§ 741, 742) and is exclusive where applicable. 46 U.S.C. § 745. Charter parties of such vessels are maritime or marine contracts (*Victory Transport Inc. v. Comisaria General*, 336 F.2d 354, 364 (2d Cir.1964)), and suits against the Government on such maritime claims must be brought under the Suits in Admiralty Act. *New Orleans Stevedoring Co. v. United States*, 439 F.2d 89, 91 (5th Cir.1971).

■ 3. The Suits in Admiralty Act embodies a two-year statute of limitations. 46 U.S.C. § 745.[5] That provision is jurisdictional, unlike most limitations legislation applicable to private parties. *Todd v. United States*, 292 F.2d 841, 844, 155 Ct.Cl. 87 (1961). Nor does the statute contain any provision for tolling limitations. There is a split of authority as to whether tolling of this statutory limitations period may ever be recognized, but even if we assume that possibility *arguendo* we, like the Board, see nothing in the circumstances presented here to warrant tolling. Nan Sing's president was not under a legal disability when the claim accrued in January 1975 (*see De Arnaud v. United States*, 151 U.S. 483, 496, 14 S.Ct. 374, 379, 38 L.Ed. 244 (1894)), and, in any event, the claimant is a corporation, not an individual. Nothing prevented the corporation from bringing suit at any time after the claim accrued; in fact, Nan Sing made a demand on USAID for payment while its president was detained in Vietnam. Similarly, there was no tolling by appellant's pursuit of permissive administrative remedies. *Benjamin v. United*

---

4. The Board rejected other grounds, urged by the Government below, for dismissing the appeal to the BCA. Those other grounds are not before us.

5. Section 745 provides: "Suits as authorized by this [Act] may be brought only within two years after the cause of action arises...."

*States,* 348 F.2d 502, 512, 172 Ct.Cl. 118 (1965).[6]

■ 4. The two-year limitation provision of the Suits in Admiralty Act, like that of the Tucker Act, fully extinguishes the claim; the claim is not simply made unenforceable as the ordinary statute of limitation would do. *States Marine Corp. of Delaware v. United States,* 283 F.2d 776, 778 (2d Cir.1960). Appellant's claim was therefore dead after January 1977, not merely suspended or in hibernation.

■ 5. Thus, Nan Sing's claim expired over two years before the Contract Disputes Act came into effect on March 1, 1979. It was not revived or restored by anything in the Contract Disputes Act; on the contrary, the Act made no provision for allowing dead claims to be reasserted under that new statute.[7] Section 16,[8] a simple transition provision, could not have meant to revive dead claims on which contractors had never brought suit. Otherwise, Civil War claims (or even earlier ones), though long dead and forgotten, could find a possible remedy under the Contract Disputes Act. It is inconceivable that Congress had such a purpose. The legal truth is that appellant, together with many another claimant against the Government who has allowed the limitations period to expire, now has no judicial remedy unless Congress intervenes.

AFFIRMED.

---

6. For the inapplicability of the "beyond the seas" provision in 28 U.S.C. § 2501 (the Tucker Act limitation provision), *see* 86–2 BCA at 95,-995.

7. The importance to appellant of being able to proceed under the Disputes Act is that, for the first time, that statute authorized administrative determination (via the contracting officer and the Boards of Contract Appeals) of claims for breach of contract, as distinguished from those "arising under the contract." *See* 86–2 BCA at 95,996–97. There is, however, no limitations provision in the Disputes Act relating to the filing of post-breach claims with the contracting officer.

8. "Notwithstanding any provision in a contract made before the effective date of the Act, the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter."